FRANK E. SCHULTZ, *Respondent*, v. WELLS BUTCHERS' SUPPLY COMPANY, *Appellant*.[1]

[1] Reported in 275 Pac. 737.

*Roberts, Skeel & Holman, Tyre H. Hollander,* and *Elwood Hutcheson,* for appellant.

*William A. Gilmore* and *Leo W. Stewart,* for respondent.

HOLCOMB, J.—Respondent is a butcher of twenty years experience. On January 25, 1928, he was engaged in the operation of a retail meat market in connection with the Bee Hive Groceteria, at 5315 Ballard avenue, Seattle; his business place being a space twelve by forty feet in the groceteria. Appellant is engaged in the business of selling fixtures and butcher's supplies in Seattle.

During the fall of 1927, the butcher shop in question was operated by one Staley, to whom appellant sold a quantity of fixtures, show cases and supplies, on a conditional sale contract. Staley gave up the shop and fixtures, and it was thereafter operated for a short time by one Zeek, who failed and passed into bankruptcy, but not by reason of the operation of the butcher shop, according to uncontradicted evidence. The groceteria then took over the operation of the meat market and kept it going from September, 1927, to December 21, 1927, when it sold the meat market to respondent. During the time that the groceteria operated the market, it made a profit on the business, its net profit for the first month being $90. During the time respondent operated it, it made a net profit, according to his evidence, of from $450 to $500 per month.

When respondent purchased the meat market, he also purchased the fixtures and equipment from appellant upon a written conditional sale contract, the purchase price being $2,250. One dollar and seven cents was paid down by respondent on the contract, and the balance was payable in installments of $40 per month on the first day of each month. The installment due January 1, after the contract went into effect, was not paid at that time, but was paid by respondent to appellant on January 15, 1928, without any objection being made by appellant because of the lateness of the payment.

On January 6, 1928, this court decided, in *West American Finance Co. v. Finstad,* 146 Wash. 315, 262 Pac. 636, that a conditional sale contract, containing a provision entitling the vendor, in the event of default, to resell the property and hold the vendee for the deficiency, constituted a chattel mortgage, and was void as to third parties, unless executed as a chattel

mortgage with acknowledgment and affidavit of good faith.

The conditional sale contract between these parties contains such a provision, and did not have an acknowledgment and affidavit of good faith. It did contain provisions for reselling the property and holding the vendee for the deficiency.

After being advised of this decision, one Levy, sales manager of appellant, went to see various purchasers of fixtures, holding such defective contracts, for the purpose of obtaining from them chattel mortgages duly executed in the manner and form required by law. On January 23, 1928, Levy visited respondent, taking with him a chattel mortgage, in due form, for him to sign. Respondent asked to be allowed to take the chattel mortgage to his attorney to secure advice, which permission was refused by the agent of appellant.

On January 25, 1928, while respondent was operating his meat market and had a large supply of meat on hand, appellant's agents went to his shop, about noon, and took away all the furnishings and equipment covered by the conditional sales contract, thereby leaving the meat shop in such condition that the business could not be operated. The fresh meat which was on hand, was promptly and properly taken to another place operated by the groceteria, and sold in due course of trade, from which was realized $190. Respondent gave different amounts as the value of the fresh meat so disposed of, at one time saying it was about $600 worth; but in his last and most definite answer in the record, stated that the price he had paid for the same was $490. As the salvage price was $190, this left $300 for loss on the fresh meat.

Two days after the removal of the fixtures and

equipment, respondent commenced his action to recover $500 for alleged damages to the meat and shop, $300 for damage to the ice machine and $2,000 for alleged loss of respondent's business and good will. At the trial, the item of $300 for damage to the ice machine was expressly waived.

The case was tried to the court and a jury. At appropriate times, appellant challenged the sufficiency of the evidence to justify any verdict for respondent, and moved for dismissal.

The jury returned a verdict for respondent in the sum of $2,000. Thereupon appellant moved for judgment *n. o. v.* or for a new trial. These motions were denied, the trial court refused to reduce the amount of the recovery and entered judgment on the verdict.

Other material facts will be referred to in the discussion of the contentions of the parties.

Appellant first contends that there was a mutual agreement for the removal of the fixtures, and that respondent could not recover damages and that, therefore, the court erred in not dismissing the action.

There was a clear conflict in the evidence upon that matter, which the court properly left for the decision of the jury.

The next claim is that the removal of the fixtures was legally justified under the terms of the contract, and for that reason respondent could not recover damages and the action should have been dismissed.

Rem. Comp. Stat., §§ 1111 and 1112, relating to enforcement of chattel mortgages by immediate action when there is danger of insecurity, even though the debt be not due, are cited to sustain this claim.

Those statutory provisions authorize an immediate action in the superior court of the county having jurisdiction in such cases, which was not the action taken by appellant in this case. That was the action which

should have been taken if the contract between the parties was one which was valid as a chattel mortgage as between them, as it probably was. That position of appellant is therefore untenable.

It is also contended under this claim that, respondent having failed to pay the first installment on January 1, when it was due, appellant was entitled to retake the fixtures and equipment. Although the contract provides for payment promptly when due, later payment did not render the vendee in default when the vendor accepted the money without objection. The contract then remained in force until the first of the next month when another payment became due. Before that payment became due, appellant forcibly dispossessed respondent of the property.

It is further contended under this claim that there was a writ from the Federal bankruptcy court, in the bankruptcy of Zeek, which had been issued and levied upon this property. That was no concern of respondent. He did not take title from Zeek. It was rather for the concern of appellant, who had contracted to convey the property to respondent, free of any defect in title.

Certain instructions were given by the trial court, and certain requested instructions refused, upon which appellant bases error.

We have carefully reviewed the instructions given and those requested and refused, and consider the instructions given as properly applying to the issues in the case as to the right of respondent to the possession of the property, at the time it was forcibly taken by appellant, and the right of appellant, under the law as stated in the *Finstad* case, *supra,* and that an extended review thereof would unnecessarily and uselessly prolong the opinion.

Another claim of appellant is that respondent

failed to mitigate damages. It is insisted that respondent failed to take prompt and proper care of the meat, and failed to obtain other fixtures elsewhere in order to keep his shop open and in operation.

Under the evidence in the record adduced on behalf of respondent, the meat was promptly and reasonably cared for.

Under the evidence, also, respondent was reasonably prompt in seeking for fixtures elsewhere, and it finally became apparent that it would be necessary to have another concern build in the fixtures and equipment in the meat market. The fixture company which was employed to build in the fixtures, commenced work on February 10, and completed it on February 23, 1928. Respondent reopened his shop on February 24, and continued to operate it until April 7, 1928, when he was forced to close, apparently because he was operating at a loss.

It is stoutly urged by appellant that no proof was made by respondent as to the proper measure of damage for the wrongful retaking of the property under the so-called conditional sale contract.

Appellant relies upon the rule, and cites authorities to support it, respecting the measure of damage for wrongful retaking or conversion of property sold on conditional sale contract.

In this case respondent did not sue for conversion of personal property. The action is for damages for injuries to meat and loss of business and good will. There was therefore nothing requiring proof of the market value of the property taken by appellant.

Under the undisputed evidence, respondent was compelled to sell the fresh meat, for $190, that had cost, according to his last and most definite answer, $490. There was there a certain damage of $300.

■ However, respondent is suing for damage to his business by loss of good will and anticipated profits. He cannot have both the loss of definite profits on the fresh meat he would have sold, and the loss of generally anticipated profits to the business. The one is included in the other. Recovery of both is a recovery of double damages.

■ Appellant earnestly insists that there should be no recovery for alleged damage to business and argues this under several heads. First, it is asserted that parol proof of the profits of the business is incompetent, in the absence of written records, and that the trial court erred in permitting such parol evidence.

Respondent stated and reiterated that he kept no written books. He did say that he had some items of cash payments on a sheet of paper which he had at his home and which he did not produce.

While it is undoubtedly the rule that mercantile financial transactions may be kept by book entries, and that such book entries, where they are proven to have been made at the time of the transaction, are competent proof, we know of no rule that excludes parol evidence as to the transactions themselves. In fact, the book entries are somewhat of the nature of secondary evidence, and the testimony of the persons having first-hand knowledge of the transactions themselves is really the best evidence. This court, however, has held in a number of cases that the fact that books were kept, does not exclude parol evidence of the transactions. See *Elderkin v. Peterson,* 8 Wash. 674, 36 Pac. 1089; *Halverson v. Seattle Electric Co.,* 35 Wash. 600, 77 Pac. 1058; *Hull v. Seattle, Renton & Southern R. Co.,* 60 Wash. 162, 110 Pac. 804; and *State v. Stevens,* 135 Wash. 361, 237 Pac. 723.

We find no merit in this contention.

█ It is further claimed under this head that respondent did not prove his damage with reasonable certainty, and that the proof was that the business of respondent was not an established and going concern.

There is sufficient proof that the business had been established and going for several months prior to its acquisition by respondent on December 21, 1927. The evidence as to its profitableness is not so satisfactory. However, there is evidence that, at the time respondent acquired it, it had been making a profit for several months with the exception of the short time it was owned by Zeek, and there is evidence that the bankruptcy of Zeek was not due to lack of profit in this business.

We have adhered to the principle that, before one can claim and recover future profits for the loss or injury to a business, it must be shown that the business was established and going and not a mere experiment, or new adventure. *Andreopulos v. Peresteredes,* 95 Wash. 282, 163 Pac. 770; *Brinnon Logging Co. v. Carlsborg M. & T. Co.,* 122 Wash. 483, 210 Pac. 945; *Schermerhorn v. Sayles,* 123 Wash. 139, 212 Pac. 156; *Seeley v. Peabody,* 139 Wash. 382, 247 Pac. 471.

We have also held to the principle that the damages for loss of anticipated profits of a business, while recoverable in any proper case, must be shown with a reasonable degree of accuracy; the evidence must be clear and free from taint of speculation and conjecture. See cases above cited and also *St. Germain v. Bakery & Confectionery Workers' Union,* 97 Wash. 282, 166 Pac. 665, L. R. A. 1917F 824, and *DeHoney v. Gjarde,* 134 Wash. 647, 236 Pac. 290.

The evidence as to the loss of future profits of the business, in addition to what we have heretofore recited, on behalf of respondent, is that his net profits amounted to from $450 to $500 per month. He based

that upon sales which he said amounted to $600 a week, upon which he made a profit of thirty per cent. This profit for four weeks amounts to $720. He testified that his total monthly expenses approximated $214. This left the net profit of about $500 a month.

To that extent, and respecting the loss of the fresh meat, heretofore referred to, amounting to $300, the testimony is positive and certain and untainted by speculation and conjecture.

But respondent also showed that he discontinued the business voluntarily on April 7, 1928. Before reopening his business, he had made diligent efforts to obtain all his old patronage by notifying his customers and notifying the customers of the groceteria operating in the same premises.

After reopening, he continued in business only two months and thirteen days. It is a fair inference that, when he saw that the business had ceased making a profit, he quit operating; but it is also to be fairly concluded that he could not hold anyone responsible for loss of profits indefinitely under such conditions. He probably continued in business for the one-half month, or thirteen days, after his business showed a loss on the last of the previous two months.

Allowing him all that he could possibly be entitled to, under his positive evidence, he cannot be entitled to more than two months' loss of profits, which would amount to $1,000. The thirty per cent profit which he claimed on loss of the sale of the fresh meat cannot be allowed him twice. If it is allowed him in the loss of anticipated general net profits of the business, it cannot be allowed as profit on the sale of that meat also. Thirty per cent profit on the loss of the sale of the fresh meat cannot therefore be allowed as damages. He is entitled to the net damages on the loss of the sale of the fresh meat which is $300. This sum added

to the $1,000, for two months, loss of profits of the business, amounts to $1,300. These are all of the damages that were proven with any certain definiteness. Hence, the verdict of $2,000 was excessive.

The verdict will therefore be set aside, the judgment reversed and respondent given the option of accepting $1,300 or suffer a new trial.

Appellant will recover costs of appeal.

Reversed and remanded.

MILLARD, FULLERTON, TOLMAN, and BEALS, JJ., concur.

[1] Reported in 275 Pac. 729.