[No. 33026.   Department One.   May 5, 1955.]

GAROLD C. GRAY *et al., Appellants,* v. JOHN J. McDONALD *et al., Respondents and Cross-appellants.*[1]

[1]Reported in 283 P. (2d) 135.

*Neal, Bonneville & Hughes*, for appellants.

*Leo Teats* and *Ralph Teats*, for respondents and cross-appellants.

OTT, J.—The amended complaint of plaintiffs, Garold C. Gray and Neil D. Gray, containing two causes of action alleged (1) that the public had acquired an easement by prescription, and (2) that plaintiffs had acquired a private prescriptive right by continuous use of a fifty-foot strip of land for more than ten years. They sought a permanent injunction, alleging that defendants had threatened to construct a building across the passageway on the strip in question.

In their answer, defendants J. J. McDonald and wife, as owners, and defendants M. A. Martin and wife, as tenants, denied the allegations of the amended complaint, prayed that the temporary injunction be quashed, and that defendants be awarded damages for the wrongful injunction. Upon the issues thus joined, the cause proceeded to trial on its merits.

This appeal by plaintiffs is from a judgment entered at

the close of plaintiffs' case, dismissing the two causes of action and dissolving the temporary injunction.

The defendants have cross-appealed, alleging that the court allowed them inadequate damages.

The facts with reference to plaintiffs' causes of action are not in dispute.

The plaintiffs assign as error the entry of two findings of fact by the trial court, (1) that the "short-cut" travel across the strip by neighbors from their homes to the business district was with the consent and knowledge of the owners; that the use of the premises by plaintiffs, their customers, and suppliers was with the owners' permission, and that such use was not shown to be hostile or adverse, and (2) that the use of the strip by the various persons was acquiesced in by the owners of the property as an act of good neighbors.

The trial court decided, as a fact, that the plaintiffs' proof did not establish a *prima facie* case. This court, therefore, will accept the court's findings to be the facts in the case, unless we determine that, construing the evidence most favorably for the plaintiffs, it preponderates against the trial court's findings. *Richards v. Kuppinger, ante* p. 62, 65, 278 P. (2d) 395 (1955).

Prior to 1910, the Tacoma Railway and Power Company was the owner of a strip of land fifty feet in width, located near the center of block 10 of Bogle's First Addition to Tacoma. The strip extended from the south line of Sixth avenue to the alley in the center of the block between Sixth avenue and south Seventh street. The strip of land was used as a "Y" for the street railway system.

In 1910, the Grays began to operate a lumber business east of and adjacent to the fifty-foot strip. In the same year, the city of Tacoma purchased the land adjacent to the west boundary of the strip and established a pole yard thereon. The city, in operating its pole yard, the Grays, in operating their lumber yard, and the public, used the strip as an open thoroughfare.

In 1927, the city sold its lots adjacent to the strip in question to the McDonalds, who built a service station thereon. From 1927 to the time of the commencement of this action, the public and the customers of the service station and of the lumber yard openly and freely used the fifty-foot strip as a street, with the acquiescence and full knowledge of the owners.

In 1938, plaintiffs declined an offer to purchase an interest in the property, and the railway company sold the strip to the present owners, J. J. McDonald and wife. During the entire forty-three-year period, neither the street railway system authorities nor the McDonalds ever objected to the free use of the strip for travel purposes by the city, the Grays, or the public. Neither was permission for such use sought during the entire period by anyone.

In 1940, defendants McDonald leased the service station to the defendants Martin, who have operated the station to the present time. The written lease with the Martins did not include the fifty-foot strip.

The undisputed testimony established the following overt acts of disseisin:

(a) The plaintiffs Gray erected upon the fifty-foot strip an office building and warehouse, without permission of the owners. The structures remained on the strip for twenty-three years. The owners, observing that the Grays had built a substantial building on their property, tendered the Grays a lease which they refused to sign.

(b) For more than ten successive years prior to the commencement of this action, the buildings on the Grays' property were constructed so that the entrances were facing the strip as though it were a street.

(c) The traveled portion of the strip was maintained continuously for public use by grading and graveling for more than ten years, at the expense of the plaintiffs and the city. In 1953, the traveled portion was oiled by the plaintiffs. All of these acts were done with the knowledge of the owners.

(d) A uniform route of travel was established and maintained for nearly twice the statutory period.

(e) The passageway was commonly referred to as Durango street.

(f) The use was not restricted in any way to neighbors or to the patrons of either business establishment. The strip was open to general use by the public.

(g) When the service station operation obstructed traffic by parking cars in the traveled area, the Grays would complain and the cars would be removed.

Did these acts of disseisin, unexplained, overcome the permissive presumption and thereby place the defendants on their proof?

■■ The following general principles have been announced by this court with reference to prescriptive rights:

(1) Easements may be acquired by prescription.

(2) The period necessary to establish a prescriptive right is ten years.

(3) It is not necessary to the establishment of a prescriptive right that the claimant make declarations of an adverse intent.

(4) The burden of proving a prescriptive right rests upon the one to be benefited.

(5) A use, at its inception, is presumed to be permissive.

(6) If the user is initiated by permission, it does not ripen into a prescriptive right, *unless* there has been a distinct and positive assertion by the dominant owner of a right hostile to the servient estate.

(7) The question of adverse user is a question of fact.

(8) Such adverse use must be open, notorious, continuous, and uninterrupted over a uniform route, and with knowledge of such use by the owner at the time when he was able in law to assert and enforce his right.

(9) When all of the essential elements listed in (8) have been established, there is a presumption that the use is adverse. The burden is then upon the servient owner to rebut the presumption by showing that the use was permissive.

*Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn. (2d) 75, 84, 123 P. (2d) 771 (1942), and cases and authorities cited; *State ex rel. Shorett v. Blue Ridge Club,* 22 Wn. (2d)

487, 494, 156 P. (2d) 667 (1945); *Roediger v. Cullen,* 26 Wn. (2d) 690, 705, 175 P. (2d) 669 (1946); *King County v. Hagen,* 30 Wn. (2d) 847, 854, 194 P. (2d) 357 (1948); *Lopeman v. Hansen,* 34 Wn. (2d) 291, 294, 208 P. (2d) 130 (1949), and cases cited; *Todd v. Sterling,* 45 Wn. (2d) 40, 42, 273 P. (2d) 245 (1954).

■ There were seven distinct acts of disseisin proved, all of which, at the close of plaintiffs' testimony, had not been explained or refuted. Is it more favorable to plaintiffs to hold that these acts establish a *prima facie* case of adverse intent, or is it more favorable to plaintiffs to hold that they do not? It is clear that a *prima facie* case of adverse intent was established.

The trial court, in arriving at its decision, relied almost entirely upon the case of *Roediger v. Cullen, supra.* The court held, in that case, that the evidence was not sufficient to establish a public prescriptive right to use a footpath along a shore line. The facts in the *Roediger* case are clearly distinguishable. The footpath was in a rural area, and the use was limited to neighbors and their friends. The path was maintained by both the owner and neighbors in a mutual community enterprise. This court found the use to have been permitted by the owner as an act of neighborly *sufferance* and *acquiescence.*

In the case at bar, the property is situated between a platted city street and alley, within the corporate limits of a city of the first class. Those who used this passageway were, for the most part, strangers to the defendants. The facts in this case do not merit a finding of neighborly sufferance or acquiescence or a community enterprise. The acts of disseisin were apparent to the servient owner for many years, when he was able in law to assert and enforce his rights.

■ The trial court was of the opinion that an open expression of disseisin must be made by the dominant user in order to establish an easement by prescription. The court said:

"At no stage in the proceedings did anyone either on be-

half of the plaintiffs or their predecessors in interest say, 'We stake out our claim here. We have developed this land, and I want you and your successors to get out. We own it.' "

This court has held that actual declarations of adverse intent need not be proved. Adverse intent may be inferred from the acts of the dominant users. *Northwest Cities Gas Co. v. Western Fuel Co., supra,* p. 87.

The defendants contend that the fact that the plaintiffs had declined an offer to purchase an interest in the passageway in 1938, and later, prior to suit, had attempted to purchase an interest therein, is proof that plaintiffs' prior acts were not with adverse intent. These contentions are not supported by the rule announced in *Northwest Cities Gas Co. v. Western Fuel Co., supra,* and *King County v. Hagen, supra,* which hold that, when easement rights are vested, they cannot be waived orally.

We therefore conclude that, construing the evidence most favorably for the plaintiffs, it preponderates against the findings of the trial court. A *prima facie* case of an easement by prescriptive use has been established by the plaintiffs, which would entitle them to such a decree unless the defendants can successfully rebut it.

The cross-appeal is based upon one assignment of error, namely, the alleged inadequacy of the judgment. In support of this contention, defendants, as cross-appellants, allege (1) that the proof of loss of income warranted more than the nominal damages allowed by the trial court, and (2) that the trial court should have allowed, as an element of damage, a reasonable attorney's fee.

Plaintiffs elected simply to appeal from the judgment of the court and did not supersede or stay the judgment as provided by RCW 4.88.060 [cf. Rem. Rev. Stat., § 1722]. The damages, if any, which defendants suffered for loss of business profits, by virtue of the temporary injunction, are limited to the period of time which was considered by the trial court, that is, from September, 1953, to March, 1954.

The trial court, after hearing the testimony, found that the proof of damages was too speculative and con-

jectural to warrant other than a nominal recovery. *Schultz v. Wells Butchers' Supply Co.*, 151 Wash. 382, 390, 275 Pac. 737 (1929), and cases cited; *Catarau v. Sunde & d'Evers Co.*, 188 Wash. 592, 601, 63 P. (2d) 365 (1936), and cases cited; *Whitaker v. G. B. & S. Mill*, 21 Wn. (2d) 625, 629, 152 P. (2d) 719 (1944), and cases cited; *National School Studios v. Superior School Photo Service*, 40 Wn. (2d) 263, 276, 242 P. (2d) 756 (1952), and cases and authority cited; *Frazier v. Bowmar*, 42 Wn. (2d) 383, 385, 255 P. (2d) 906 (1953), and cases and authority cited.

The trial court further found that plaintiffs and defendants had tried the cause upon its merits, and that, therefore, reasonable attorneys' fees were not allowable as an element of damages. The main issue was whether or not an easement by prescription had been established. The injunctive relief prayed for was only ancillary thereto. Annotation, 164 A. L. R. 1090; *Donahue v. Johnson*, 9 Wash. 187, 191, 37 Pac. 322 (1894); *Mann v. Becker*, 90 Wash. 534, 538, 156 Pac. 396 (1916); *James v. Cannell*, 135 Wash. 80, 83, 237 Pac. 8 (1925). The evidence sustains the court's findings.

The judgment is reversed upon plaintiffs' appeal, and remanded to the superior court with instructions to enter an order granting plaintiffs' motion for a new trial. Should the court determine, after retrial, that plaintiffs should prevail, then the defendants' cross-complaint would be dismissed with prejudice. Should the court determine, upon retrial, against the plaintiffs, then the judgment of the trial court heretofore entered upon defendants' cross-complaint is affirmed.

Plaintiffs shall recover costs on this appeal.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and FINLEY, JJ., concur.