[No. 32822. *En Banc.* September 29, 1955.]

NORMAN B. ANDERSON *et al., Respondents,* v. SECRET HARBOR FARMS, INC., *et al., Appellants.*[1]

[1]Reported in 288 P. (2d) 252.

 

*McMicken, Rupp & Schweppe,* for appellants.

*Alfred McBee,* for respondents.

WEAVER, J.—Defendants appeal from a judgment which (a) enjoins and restrains them

". . . from going upon the real property herein mentioned or any part thereof for any purpose at any time," and (b) quiets title to the real property in plaintiffs.

Plaintiffs and defendants own adjoining tracts of land on Cypress Island. Both tracts border on Secret Harbor. Defendants' land lies generally to the north and west of the harbor. The land of plaintiffs lies along the south side.

Defendants' access to their property is determined by the tide. At high tide, they can enter the harbor by boat and reach their property. At low tide, they must dock at an old boat landing on plaintiffs' land at the entrance to the harbor and traverse a well-defined footpath across the land of plaintiffs to their own property. The foot path existed prior to 1890 and has been used by defendants and their predecessors in interest since that time. It is described in this proceeding as beginning "on the western boundary of the plaintiffs' property and runs in a generally northeasterly direction to the eastern side of plaintiffs' property." Generally, it parallels the southern shore line of the harbor.

The defendants (or certain of them, so far as is here material) purchased their property in 1939 from the Wooten family, who had owned it for many years. T. J. Wooten, who left the island in 1915, testified that he had used the footpath in question for twenty-five years. Philip Wagner, who was almost eighty-two years old at the time of trial, testified that he lived on the island when he was a boy, and that he

used the path many times when plaintiffs' property was owned by the Gadbois brothers.

 Plaintiffs purchased their property in 1946 from Clarence Shaw, who had acquired it late in 1940 or early 1941. During the period the Wooten family owned the property now owned by defendants, Mike and Joe Gadbois owned the land now owned by plaintiffs.

On two occasions in 1946, "No Trespassing" signs were posted at the boat landing in an attempt to close the path. On one occasion, the signs were kicked down; on the other, they were ignored by defendants, who continued to use the path as usual.

Plaintiffs commenced this action to enjoin defendants from using the footpath and to remove the cloud on their title, which exists in the form of defendants' alleged right to use the footpath. As an affirmative defense, defendants claim a prescriptive right to an easement over plaintiffs' property.

There is no evidence that anyone ever gave defendants or their predecessors in interest permission to use the footpath. One of defendants testified that when the owner took her to the island in January, 1938, to inspect the property, they landed at the dock and traversed the path; that it was well defined; that it was not wide, but was clearly a path on which to walk and very obviously one that had been used recently and probably for a long time. After purchasing their property, defendants, and those going to and from their property, used the path openly and constantly. They now have about forty people on their place.

There is no evidence that anyone ever objected to the use of the path by defendants and their predecessors in interest, prior to the erection of the "No Trespassing" signs in 1946.

In support of the judgment entered, the trial court found:

"VI. That the path hereinbefore referred to has been in existence for many years and has been used by all inhabitants at or near the vicinity of the plaintiffs' and defendants' for a means of ingress and egress and by hunters, vacationers and many other persons, including the defendants, and that *the use thereof by all of such persons and these defendants prior to 1946 was with the neighborly permission of the*

*various owners of the plaintiffs' property*; that subsequent to 1946 the defendants used the said path openly, continuously and notoriously and adversely under a claim of right but that *the use of said path by the defendants prior to 1946 was permissive only.*

"VII. No express permission to use said path was given to the defendants or their predecessors in interest by the plaintiffs or their predecessors in interest. However, *such use was by an implicit permission as a neighborly act* arising out of the necessity that all persons who lived in that vicinity had to use the harbor and thus had to use the only possible access path to the harbor." (Italics ours.)

█ Although the doctrine of the establishment of a right-of-way easement by prescription is said to rest upon the presumption of a lost grant, the easement, in fact, springs from the uninterrupted, open, and notorious use and enjoyment thereof for the prescribed statutory period. If the use meets these conditions and, in addition, is hostile to the title of the owner of the servient estate (as distinguished from permissive), then the conclusion follows that it has been established by adverse user. The presumption furnishes only one of the reasons for the conclusion.

█ The burden of proving the existence of a prescriptive right always rests upon the one who is to benefit by its establishment. This burden of proof never shifts. An easement by prescription must be established by facts.

The principles which govern the acquisition of an easement by prescription are set forth at considerable length in *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn. (2d) 75, 84, 123 P. (2d) 771 (1942). Therein, it is said:

"When one enters into the possession of another's property there is a presumption that he does so with the true owner's permission and in subordination to the latter's title."

From this, an engaging argument is made in the instant case that the use, being permissive in its inception, cannot ripen into a prescriptive right, no matter how long it may continue, unless there has been a distinct and positive assertion by the dominant owner of a right hostile to the owner

of the servient estate, such as tearing down or ignoring "No Trespassing" signs, as occurred in 1946.

■ The fallacy of the argument is this: Just as soon as there is *proof* that the use of another's land has been open, notorious, hostile, continuous, uninterrupted, and *for the required time,* the presumption of a permissive use is spent; it disappears. The one claiming the easement has established a *prima facie* case. (It is not necessary to say that such proof "creates a *presumption* that the use was *adverse,* unless otherwise explained," although there is authority for it. See *Northwest Cities Gas Co. v. Western Fuel Co., supra,* p. 85.) It then becomes incumbent upon the one denying the existence of the easement to contravert the *prima facie* case. Whether the use was hostile or permissive becomes a question of fact.

The crux of the problem in the instant case is whether there is sufficient evidence in the record to sustain the trial court's finding that the use was impliedly permissive.

■ If *express* permission is given to use the right of way, user does not ripen into a prescriptive right simply by lapse of time. *Millard v. Granger,* 46 Wn. (2d) 163, 279 P. (2d) 438 (1955).

The only facts appearing in the record, and relied upon by the trial court to support the finding of an implied permissive use, are (1) the use of the path by the general public and (2) the inaccessibility of defendants' land at low tide, except by use of the path. Neither of these factors establishes a permissive use.

■ It is not necessary that the person asserting a right of way by prescription has been the only one using the path, so long as he exercises and claims his right independent of others. *Hendrickson v. Sund,* 105 Wash. 406, 177 Pac. 808 (1919); *Lund v. Johnson,* 162 Wash. 525, 298 Pac. 702 (1931). The general public used the path to hunt, fish, and picnic on the island, while the defendants and their predecessors used the path for access to their property. Defendants' claim is independent of any claim for public use. See annotation: Use by public as affecting acquisition by individual of right of way by prescription. 111 A. L. R. 221 (1937).

█ The finding of fact that the path was the "only possible access path to the harbor" imports, under the circumstances of this case, a use in derogation of the title of the record owner.

The evidence in this case discloses that the path is a well-defined, uniform route of pedestrian travel which has been in continuous, uninterrupted, open, and notorious use without deviation in course by defendants and their predecessors in interest for longer than the prescribed statutory period. Its use has been with knowledge of the owners, at a time when they were able to assert and enforce their rights.

This conclusion is supported by several considerations.

T. J. Wooten testified on cross-examination:

"Q. And did your folks and the Gadbois boys have an arrangement between themselves where the Gadbois had given your people permission to use the path to come and go as they wanted to? A. Not that I know but we always used it. Q. And they saw you coming and going and it was, oh, sort of a neighborly affair that nobody was going to kick and complain about your walking across their property and they walked across yours if they wanted to; that is the kind of arrangement it ·was, isn't that so? A. I don't know whether it was an arrangement or not. Q. But that was the situation? It was largely a neighborly affair being pleasant and affable and neighborly to your neighbors? A. *We had to go across their place to get to town when the tide was out.* Q. They knew that was the situation and there wasn't any other way to do it, and they weren't complaining about it and you had no trouble about it at all? A. No." (Italics ours.)

The only mention of this being a neighborly act (and thus permissive rather than prescriptive) is found in the questions asked Mr. Wooten on cross-examination. As we interpret his answers, he steadfastly refused to adopt counsel's suggestion that permission had been granted by "the Gadbois boys." In response to an inquiry of it being a "neighborly affair," he testified, "We *had to go across their place* to get to town when the tide was out," and that is exactly what the owners of the dominent estate have been doing for more than sixty years.

In addition, a sister of Clarence Shaw (plaintiffs' prede-

cessor in interest, who acquired the property now owned by plaintiffs in 1940 or 1941) testified that she was confident Mr. Shaw did not grant defendants permission to use the path, because "They [Mr. Shaw and defendants] had some controversy" which she particularized in her testimony. It could not be called a "neighborly act."

The facts distinguish this case from *Roediger v. Cullen*, 26 Wn. (2d) 690, 175 P. (2d) 669 (1946). In *Gray v. McDonald*, 46 Wn. (2d) 574, 579, 283 P. (2d) 135 (1955), we pointed out that in the *Roediger* case, *supra*,.

"The path was maintained by *both the owner* and *neighbors* in a mutual community enterprise." (Italic ours.)

Thus, the use was "an act of neighborly *sufferance* and *acquiescence*." Such is not the case here.

In *State ex rel. Shorett v. Blue Ridge Club*, 22 Wn. (2d) 487, 156 P. (2d) 667 (1945), the public, for recreational purposes, wandered across the property involved, so that there was no well-defined, uniform route of travel and no evidence that there was a way by adverse user across any particular piece of the property.

We conclude from the evidence that the use of the footpath by defendants and their predecessors in interest was hostile and "indeed adverse and not permissive" (See *Northwest Cities Gas Co. v. Western Fuel Co., supra*, p. 86.) or subordinate to the rights of the owners of the servient estate. The evidence preponderates against the trial court's findings of fact to the contrary.

Defendants have sustained the burden of proving their affirmative defense to plaintiffs' action to quiet title to the property involved, in so far as defendants' right to use the footpath is concerned. To that extent, the judgment is modified.

It is so ordered.

ALL CONCUR.