[No. 6611–1–I.   Division One.   December 24, 1979.]

SHANE D. DUNBAR, *Respondent,* v. HERBERT O. HEINRICH, ET AL, *Appellants.*

*Rudolf V. Mueller* and *J. Robert Leach,* for appellants.

*Jones & Young* and *Arnold M. Young,* for respondent.

RINGOLD, J.—The defendants Herbert O. Heinrich and his wife appeal from a judgment granting Shane D. Dunbar a prescriptive easement and ordering that Heinrich pay $250 attorney's fees.

Heinrich contends: (1) substantial evidence was not presented upon which the trial court could find that Dunbar's use of the road was "adverse," (2) substantial evidence was not presented to support the findings as to the location and extent of the easement, and (3) it was error to award attorney's fees in connection with a post–trial contempt proceeding. Except for the award of attorney's fees, we affirm.

In 1966 Dunbar commenced building a residence on property which he had purchased in 1963. He gained access to the property over a road which is currently on property owned by Heinrich. Dunbar believed the road was a public right–of–way until approximately 1972 when he learned that it was on property owned by a private investment company. He continued to use the road on a daily basis to gain access to his residence.

After Heinrich purchased the property in April of 1977, Dunbar initiated this action seeking a prescriptive easement over the west 100 feet and south 30 feet of Heinrich's property. A temporary injunction was granted restraining Heinrich from obstructing Dunbar's use of the road. Subsequent to the trial court's oral decision granting Dunbar a prescriptive easement and the entry of written findings of fact and conclusions of law, Dunbar filed a motion for an

order to show cause why Heinrich should not be held in contempt for violation of the injunction. Heinrich appeals from the judgment granting Dunbar a prescriptive easement and awarding $250 as attorney's fees incurred in the show cause proceeding.

Heinrich initially contends that substantial evidence was not presented from which the trial court could find that Dunbar's use of the road was "adverse." This argument is premised on the fact that Dunbar used the roadway under the mistaken belief that it was public; thus, the use cannot be considered hostile or adverse to the true owner.

■ There are Washington cases which hold that for purposes of adverse possession the element of hostility or adversity is absent if the claimant enters upon the property in the mistaken belief that it is public land. *See, e.g., Thorsteinson v. Waters,* 65 Wn.2d 739, 399 P.2d 510 (1965); *Skansi v. Novak,* 84 Wash. 39, 146 P. 160 (1915); *McNaught–Collins Improvement Co. v. May,* 52 Wash. 632, 101 P. 237 (1909); *Jackson v. Pennington,* 11 Wn. App. 638, 525 P.2d 822 (1974). We have found no case which similarly restricts the establishment of a prescriptive easement. Subjective intent, as an element of adverse possession, has been criticized:

> [T]he law would have been clearer and in the long run more useful to the people if Washington had never gone into the "subjective intent" business at all. All, or perhaps even most, states have, and the common law of England seems to have, had no such element to adverse possession. Adverse possession revolves around the character of possession, and it is difficult to see why a man's secret thoughts should have anything to do with it. Maybe the idea originated in a confusion of permission or agreement between owner and possessor with unilateral intent in the possessor's mind. Whatever the reason, the court could yet perform a service by doing away with any requirement of subjective intent, negative or affirmative. Since a man cannot by thoughts alone put himself in adverse possession, why should he be able to think himself out of it?

(Footnote omitted.) W. Stoebuck, *The Law of Adverse Possession in Washington,* 35 Wash. L. Rev. 53, 80 (1960). We find this reasoning persuasive as it relates to prescriptive easements. Adverse use should relate to the facts and circumstances surrounding the character of the use measured by the standard of a reasonable person, and should not depend on the claimant's subjective intent. *See* 4 H. Tiffany, *The Law of Real Property* §§ 1142, 1149, 1197 (3d ed. 1975). We hold that Dunbar's initial use of the road believing that it belonged to the public does not as a matter of law establish that his use was not hostile or adverse to the true owner. A declaration by the claimant of an adverse intent is not necessary to the establishment of a prescriptive easement. *Gray v. McDonald,* 46 Wn.2d 574, 283 P.2d 135 (11955). The required adversity relates to use which is inconsistent with the rights of the true owner.

Whether the use has been "adverse" is one of fact. *Gray v. McDonald, supra.*

> Adverse user is such use of property as the owner himself would exercise, entirely disregarding the claims of others, asking permission from no one, and using the property under a claim of right. Hostile use of real property by an occupant or user does not import ill will, but imports that the claimant is possessing or using it as owner, in contradistinction to possessing or using the real property in recognition of or subordinate to the title of the true owner.

*Malnati v. Ramstead,* 50 Wn.2d 105, 108, 309 P.2d 754 (1957).

The evidence showed that Dunbar initially used the road in 1963 for purposes of clearing his property and building his residence. His driveway and garage were constructed so he could obtain convenient ingress and egress from the road. He drove back and forth on the road on a daily basis for more than 10 years. Other persons also used the road; however, Dunbar's use demonstrated a right independent of others, *viz.,* as ingress and egress to his home. Even after Dunbar learned that the road was not public, he continued to use it on a daily basis. From the facts, the trial court

could infer that Dunbar's use was adverse because he used a right-of-way as an owner and not in recognition of the title of the true owner. It was unnecessary for Dunbar to show that he was the only one using the road, "so long as he exercises and claims his right independent of others." *Anderson v. Secret Harbor Farms, Inc.*, 47 Wn.2d 490, 494, 288 P.2d 252 (1955). Substantial evidence supports the trial court's findings that Dunbar's use was adverse or hostile.

Heinrich next contends that substantial evidence was not presented to support the finding as to the location and extent of the easement. We find substantial evidence to support finding of fact No. 4: "[Heinrich's] property is a thirty (30) foot strip of land and its southern boundary coincides with the northern boundary of [Dunbar's] property." The record is replete with testimony concerning a 30- by 100-foot strip of land which borders on the southern boundary of Heinrich's property and the northern boundary of Dunbar's property.

■ Heinrich's last contention is that attorney's fees should not have been awarded in the post-trial contempt proceeding. We agree. RCW 7.20.100 provides:

> If any loss or injury to a party in an action, suit or proceeding prejudicial to his rights therein, have been caused by the contempt, the court or judicial officer, in addition to the punishment imposed for the contempt, may give judgment that the party aggrieved recover of the defendant a sum of money sufficient to indemnify him, and to satisfy his costs and disbursements, which judgment, and the acceptance of the amount thereof, is a bar to any action, suit or proceeding by the aggrieved party for such loss or injury.

In its oral opinion following the hearing on the order to show cause, the trial court stated:

> What I'm going to do with this very, very short notice involved and the inability of either counsel to present any legal authority to the question of whether or not the servient owner of an easement or property over which the easement runs can under any given set of circumstances gate the easement is something that I would like to have presented to me on legal authority. So what I'm going to

do is this: *I will not rule on the merits of the question.* As long as Mrs. Heinrich is here, I will warn her, however, that any further investment that she might put into gating or fencing or otherwise constructing anything of that nature on this 100 feet is at her risk, and she may be ordered to remove it in the future after I have had the opportunity to rule on the question on the merits.

(Italics ours.) Since the trial court did not rule on the merits and did not impose punishment for contempt, attorney's fees should not have been awarded.

Affirmed as modified.

ANDERSEN, J., concurs.

WILLIAMS, J. (dissenting)—As the majority points out, in adverse possession cases the element of adversity does not exist if the claimant exercised dominion over the disputed land in the belief that such property belonged to the government. *Thorsteinson v. Waters,* 65 Wn.2d 739, 399 P.2d 510 (1965). The question of adverse use is one of fact in both adverse possession and prescriptive right cases. *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn.2d 75, 123 P.2d 771 (1942). Because the court found that Dunbar believed the road was a public right–of–way until 1972, there was insufficient time (10 years) for the user to ripen into a prescriptive right.

Reconsideration denied January 23, 1980.

Review granted by Supreme Court March 21, 1980.