IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| PAT MCINTYRE, a single man; DAVID THOMPSON, a single man; and GARY PETERS, a single man, | ) ) ) ) | No. 30351-9-III |
| Appellants, | ) ) | |
| v. | ) ) | |
| SPOKANE VALLEY HERITAGE MUSEUM, d/b/a SPOKANE VALLEY LEGACY FOUNDATION, a non-profit corporation, | ) ) ) ) ) | |
| Respondent. | ) ) ) | UNPUBLISHED OPINION |

SIDDOWAY, A.C.J. — The trial court rejected the claims of three owners of retail businesses in Spokane County to prescriptive rights, in favor of their patrons, to drive through and park in a parking lot owned by their neighbor to the west. While the business owners raise a number of objections to the trial court's findings and procedure, one issue is dispositive: substantial evidence supports the trial court's finding that the patrons' use of the lot—occurring largely during its ownership by Spokane County—was permissive. Because hostile use is an essential element of the business owners' claim, we affirm the trial court's dismissal.

No. 30351-9-III
*McIntyre v. Spokane Valley Heritage Museum*

FACTS AND PROCEDURAL BACKGROUND

Pat McIntyre, David Thompson, and Gary Peters are owners of retail businesses that front on the south side of Sprague Avenue, a major east-west arterial in Spokane County. To the west end of the block on which their businesses are located is the former town hall of the township of Opportunity, built in or about 1910. The township deeded the town hall property and its adjoining parking lot to Spokane County in 1990. In 2004, the county conveyed the property to the newly-incorporated city of Spokane Valley, which conveyed it, in turn, to the Spokane Valley Legacy Foundation, doing business as the Spokane Valley Heritage Museum.

In 2010, McIntyre, Thompson, and Peters brought this action asking the court to decree a prescriptive easement to the Museum property for parking, ingress, and egress, in favor of them and their patrons. Specifically, McIntyre, doing business as Ichabod's, and Thompson, doing business as Dave's Bar and Grill, asserted a prescriptive right in their patrons to park in the Museum's parking lot. They and Peters, who owns and operates Peters Hardware, asked the court to enjoin any limitation on access to their properties through the Museum's property. The following is a depiction of the relative locations of the parties' properties, prepared by the trial court:[1]

_____

[1] As pointed out by the trial court, its depiction is rough and not to scale.

2



Clerk's Papers (CP) at 65.

The business owners' claims were presented in a two-day bench trial, during which the trial court viewed the property. At the conclusion of trial, the court issued a memorandum opinion that it later incorporated into abbreviated findings and conclusions. Among the incorporated findings were the following statements that appear (nonsequentially) within the court's memorandum opinion:

> Plaintiff Pat McIntyre has owned Ichabod's, a bar and grill, since June of 1981. The establishment itself has been in business at the current location, 12116 E. Sprague, since 1970.

> Plaintiff Gary Peters owns Peters' Hardware. The hardware store, located at 12118 E. Sprague, has been in his family since 1940[.]

> Plaintiff David Thompson owns Dave's Tavern, a bar and grill, located at 12124 E. Sprague. . . . In 1989 he purchased [what was then Sig's Tavern] and re-named it Dave's Tavern.

> In approximately 1999, [Thompson] purchased the building between Dave's Tavern and Peters' Hardware, located at 12122 E. Sprague. . . . For

a while Plaintiff McIntyre [sic] rented that space to someone for use as a hair salon, but it is currently vacant.

Thompson also owns the parking lot to the south of his business, across the alley. In 2007, the City of Spokane Valley "took a piece" of his parking lot and rerouted the alley around [a] new Rite Aid [constructed at the east end of the block].

All three of the businesses (as well as the unoccupied space where the hair salon used to be) have back entrances only. In the front, facing Sprague Avenue, there is a sidewalk but no parking.

Each business has parking areas behind their businesses (to the south, at the back entrances).

For years, the three businesses and their customers have used the [Museum's] parking lot as a thoroughfare (long before it was owned by the foundation), to access the three businesses, and for parking and their own uses.

In 1956, [Opportunity] Township came to own [the property at issue in this case].

In November of 1990, Opportunity Township quitclaimed the (now Museum) lots to Spokane County.

The Museum property [was] managed and maintained by Spokane County from 1996 to 2004. The property was vacant during that time except for one year when the building was leased as a frame shop.

For years there was a "for rent" sign posted at the location, placed there by the Spokane County Department of Parks and Recreation. . . . [O]ver the years there were occasional ("sometimes") wedding receptions or other events held at the premises.

The County did some remodeling over the years, and in 1996 or 1997 the County placed some Jersey (concrete) barriers along the east property line of the county property, between the County property and the Ichabod property. Mr. McIntyre, proprietor of Ichabod's complained, so the County

took the Jersey barriers down.

In 2000, the . . . property was rented for approximately one year as a frame shop. The patrons of the three neighbor businesses continued to drive through and use the parking areas as they wished. The proprietor of the frame shop . . . wanted people to stop driving through the parking area of the frame shop, so she "put up bumpers" approximately 4 feet high and 5 feet long. The customers just pushed them aside and used the area to drive through and park anyway[.]

On January 5, 2004, Spokane County quitclaimed the property to the City of Spokane Valley[.] On March 10, 2004, the City of Spokane Valley quitclaimed the (Museum) property to the Spokane Valley Legacy Foundation[.]

When the Museum started having events, [Museum director Jayne Singleton] placed flyers on cars of the businesses stating they could not park on the Museum property.

[S]ometime in the late 2000's the Museum put up a sign that said "MUSEUM PARKING ONLY."

In approximately April of 2009, the Museum put up a fence to keep people from using their parking lot as a thoroughfare, as such traffic (which is described as fast) created a danger to patrons of the Museum (including school children on field trips) and interfered with the Museum's usage of their property.

Plaintiffs' witness Andrea Owens testified she had been going to Ich[a]bod's three times a week for twenty-three years, and parked on what she now knows to be [M]useum property; she thought that parking area belonged to Ichabod's. She testified that Ichabod's patron[s] continued to park there after the bumpers were put up, even though there were "Rouse's Towing" signs and "Museum Parking" was painted on the pavement itself. However, on cross-examination, Ms. Owens testified that she told Jayne Singleton, the [M]useum director, that if the [M]useum had a function they (the patrons of Ichabod's) would park elsewhere.

Since the new Rite Aid has been built on the corner of Sprague and Pines,

directly to the east of Dave's Bar, patrons of the three businesses have had access to the businesses through the large Rite Aid parking lot, and also been able to park there. . . . The Rite Aid construction was completed around October of 2009.

CP at 51-56. None of these findings is separately assigned error by the business owners. *See* RAP 10.3(g). In any event, each is supported by substantial evidence.

The trial court concluded that the business owners had demonstrated only three elements required to establish a prescriptive easement.[2] It concluded that they failed to demonstrate hostile use and also failed to demonstrate exclusive use, which it concluded was a fifth required element. With respect to its conclusion that the business owners failed to demonstrate hostile use for the 10-year period, the court stated that it "must look at the totality of the circumstances," and set forth the following findings as relevant:

The lot in question was basically vacant for many years. It had ample room to permit parking and create an alleyway. For most of the time the Plaintiffs claim they were using the property adversely the property was owned by the County of Spokane. Given the fact that the County of Spokane owns a considerable amount of real property, allowing three small businesses to use one of their currently unoccupied properties can certainly be viewed as neighborly acquiescence. If this were a single-family home that, for ten years, allowed three businesses to use 75% of their land the circumstances would be substantially different. Certainly the use of a single-family home's property would be viewed as hostile rather than impliedly permissive. However, since this is property owned (at the time in question) by an entity as large as the County of Spokane, it is more than reasonable to expect such neighborly acquiescence since such acquiescence

---

[2] The trial court characterized the three elements that were demonstrated by the business owners as (1) actual use for 10 years over a uniform route, (2) open and notorious use, and (3) continuous and uninterrupted use.

6

would not work any hardship on the true owner. One specific example of such acquiescence was when the County of Spokane erected Jersey barriers on the eastern property line of the two lots. After the Plaintiffs had demonstrated their objections to the barriers, the County of Spokane acquiesced and removed them.

CP at 59.

The trial court denied the relief requested by the business owners and dismissed their claims with prejudice. They timely appealed.

ANALYSIS

The business owners have set forth 14 "objections" in the section of their brief devoted to assignments of error. The objections can be reduced, in simpler terms, to the following material assignments of error:[3]

The trial court's conclusion that the property was used in a governmental capacity, thereby preventing prescriptive rights from arising, was not supported by substantial evidence;

The trial court erred in concluding that the 10-year period of hostile use required to establish a prescriptive easement must transpire during a period of continuous ownership by a single owner of the servient estate;

---

[3] A number of the business owners' assignments of error and objections are to the trial court's refusal to enter findings and conclusions presented by the parties. After being presented with two unsatisfactory proposals, the trial court entered her own skeletal findings and conclusions, incorporating her memorandum opinion. While CR 52(a)(1) requires the trial court to "find the facts specially and state separately its conclusions of law," thereby facilitating challenges and review on appeal, we recognize that the trial court's overarching concern here was that any findings and conclusions she signed reflected her actual reasoning. The trial court recognized that the lack of enumerated findings might require a remand. We do not find it necessary to remand in this case and disregard those objections.

7

The trial court erred in concluding that exclusive use is a necessary element in establishing the right to a prescriptive easement; and

Substantial evidence did not support the trial court's conclusion that they had failed to demonstrate the required "hostile" use.

We address the last assignment of error first.

To establish a prescriptive right-of-way over the land of another person, the party claiming the right must prove that his use of the other's land has been open, notorious, continuous, uninterrupted, over a uniform route, adverse to the owner of the land sought to be subjected, and with the knowledge of such owner at a time when he was able in law to assert and enforce his rights. *Nw. Cities Gas Co. v. W. Fuel Co.*, 13 Wn.2d 75, 85, 123 P.2d 771 (1942).

Whether use is adverse or permissive is a question of fact. *Miller v. Jarman*, 2 Wn. App. 994, 997, 471 P.2d 704 (1970). The trial court must examine all the circumstances surrounding each case. *Id.* "Unchallenged use for the prescriptive period is a circumstance from which an inference of adverse use may be drawn. Such unchallenged use is, however, but one circumstance, and there may well be a combination of circumstances from which the trier of the facts could determine that such use was permitted as neighborly courtesy and was not adverse." *Id.* (citing *Cuillier v. Coffin*, 57 Wn.2d 624, 358 P.2d 958 (1961)). "[W]hen the facts in a case support an inference that use was permitted by neighborly sufferance or accommodation, a court

8

may *imply* that use was permissive and accordingly conclude the claimant has not established the adverse element of prescriptive easements." *Drake v. Smersh*, 122 Wn. App. 147, 154, 89 P.3d 726 (2004).

A variety of circumstances are relevant to the question of whether use was hostile or permissive. *Crites v. Koch*, 49 Wn. App. 171, 177, 741 P.2d 1005 (1987). Among circumstances that have been determined to be relevant are the nature and location of the property, *Nw. Cities*, 13 Wn.2d at 88; the relationship between the parties, *Miller*, 2 Wn. App. at 997; and whether the type of use of the other's property is common and unlikely to be perceived as a trespass, *Crites*, 49 Wn. App. at 177-78.

With respect to roadways, there is no evidence of adverse use where the claimant uses his neighbor's established private road in a manner that does not interfere with the owner's use of that same road. *Imrie v. Kelley*, 160 Wn. App. 1, 10-11, 250 P.3d 1045 (2010). Mutual use of a road by neighbors supports an inference of permissive use because it is assumed the owner is permitting his or her neighbor to use the road as a neighborly accommodation. *Cuillier*, 57 Wn.2d at 627. "'It is only when the use of the path or road is clearly adverse to the owner of the land, and not an enjoyment of neighborly courtesy, that the land owner is called up "to go to law" to protect his rights.'" *Roediger v. Cullen*, 26 Wn.2d 690, 709, 175 P.2d 669 (1946) (quoting *Weaver v. Pitts*, 191 N.C. 747, 133 S.E. 2, 3 (1926)).

"Prescriptive rights are not favored by the law." *Imrie*, 160 Wn. App. at 7 (citing

*Nw. Cities*, 13 Wn.2d at 83). The law should and does encourage acts of neighborly courtesy. *Roediger*, 26 Wn.2d at 709 (quoting *Weaver*, 133 S.E. at 3). The burden of proving the existence of a prescriptive right always rests upon the party benefited by the easement. *810 Props. v. Jump*, 141 Wn. App. 688, 700, 170 P.3d 1209 (2007) (citing *Anderson v. Secret Harbor Farms, Inc.*, 47 Wn.2d 490, 288 P.2d 252 (1955)).

A trial court's challenged findings of fact are reviewed for substantial evidence. *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." *In re Marriage of Hall*, 103 Wn.2d 236, 246, 692 P.2d 175 (1984). We view substantial evidence in the light most favorable to the respondent. *Pub. Util. Dist. No. 2 of Grant County v. N. Am. Foreign Trade Zone Indus., LLC*, 159 Wn.2d 555, 576, 151 P.3d 176 (2007).

The business owners rely predominantly on the years of county ownership for the 10-year period of adverse use and first contend, as a matter of law, that their and their patrons' use of the parking lot could not have been permissive during the period the property was owned by the county. They argue that by statute and controlling case law a county may not informally relinquish its interest in real property. Questions of law are reviewed de novo. *Sunnyside Valley Irrigation Dist.*, 149 Wn.2d at 880.

Chapter 36.34 RCW, on which they rely, applies only to the sale or lease of county property; they cite no provision that would prevent the county from permitting members

of the public to use a county parking lot. *Nelson v. Pacific County*, 36 Wn. App. 17, 22, 671 P.2d 785 (1983), on which they also rely, is no more helpful. That case holds that "[p]roperty once acquired and devoted to public use is held in trust for the public and cannot be alienated without legislative authority, either express or implied." *Id.* at 23. Permission to use property that can be freely withdrawn does not constitute alienation. The county was not incapable, legally, of engaging in a neighborly accommodation.[4]

Turning to permissive versus hostile use as a question of *fact*, the evidence establishes circumstances that support the trial court's finding and conclusion of permissive use. During the period of county ownership, the relationship of the parties was that of elected government and public—inherently one in which the government would be expected to be accommodating, unless there was some reason it could not be. As the trial court found, "[T]he County of Spokane owns a considerable amount of real property" and "allowing three small businesses to use one of their currently unoccupied

---

[4] The business owners' reliance on *Nelson* also places them in a paradox. As the Museum points out, *Nelson* deals with property held in a governmental capacity. If the business owners concede that the county owned the Museum property in a governmental capacity, then the 10-year period required to establish prescriptive rights could not have commenced until the property came into private ownership in 2004. *See* RCW 4.16.160 (statutes of limitation do not run against actions brought by or for the benefit of a county); *Gorman v. City of Woodinville*, 175 Wn.2d 68, 72, 283 P.3d 1082 (2012) (the statute of limitations for adverse possession will not run against the state or city acting in its governmental capacity); *Finley v. Jordan*, 8 Wn. App. 607, 609, 508 P.2d 636 (1973) (period for establishing adverse possession commences no earlier than transfer from the government to a private owner).

properties can certainly be viewed as neighborly acquiescence." CP at 59.

The nature of the property—a "basically vacant" parking lot—also supports an inference of permissive use. CP at 59. Where a parking lot is not being operated commercially for parking and is not posted as private (and the evidence established that this lot was posted as private only for a relatively short period of time), it is not uncommon for it to be used as a thoroughfare or for short-term parking without being perceived as a trespass. In this respect, a parking lot is similar to a private road. Washington cases holding that mutual use of a private road supports an inference of permissive use unless the use is clearly adverse are persuasive authority here.

The business owners argue that their patrons' use *was* clearly adverse insofar as they not only ignored, but also moved around and messed up the barriers put into place by the county and its tenant. But barriers were installed on only a couple of occasions over the years, including during the year in which the property was leased and, as the trial court found, the county removed the barriers in the face of these objections. The business owners insist that the inference that must be drawn from the patrons' actions and the county's response is that the county acquiesced in a claim of right by the business owners and their patrons. We disagree. An equally valid inference is that members of the public (some presumably county residents and taxpayers) were not asserting an adverse claim, but only expressing frustration at the county for preventing them from using an empty parking lot for no good reason. The county's response can be explained as government

12

recognizing that it should be more accommodating of the convenience of its residents and other members of the public.

Our role is not to reweigh the evidence and substitute our judgment for that of the trier of fact. *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 724, 225 P.3d 266 (2009). Substantial evidence supports the trial court's findings of permissive use.

Because the business owners' failure to establish hostile use is fatal to their claims, we need not reach their remaining assignments of error.

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:

_____
Sweeney, J.

_____
Kulik, J.