[No. 33675.   Department Two.   April 11, 1957.]

JOSEPH MALNATI et al., *Respondents*, v. WILLIAM RAMSTEAD et al., *Appellants.*[1]

[1]Reported in 309 P. (2d) 754.

*Newman & Newman,* for appellants.

*Kelleher & Curran (James H. Kelleher,* of counsel), for respondents.

WEAVER, J.—Defendant appeals from a judgment which quiets title in plaintiff to a certain spring located on defendant's land, and to the exclusive use of the water, water course, settling basin, reservoir tank and screens, pipes, and other facilities necessary to convey the water to the plaintiff's land; together with an easement for ingress and egress over and along a path for access to the spring, in order to repair, replace, and maintain such facilities as are necessary for the beneficial appropriation and use of the water.

Plaintiff and defendant are abutting property owners. When plaintiff acquired interest in his land December 2, 1913, a spring existed on the land now owned by defendant, which spring was approximately three hundred and ninety feet east of their common boundary.

Since 1914, plaintiff has continuously used the water that flows through a ditch from the spring to a settling basin, thence to a five hundred gallon tank, and from it, by pipe, to plaintiff's land, for irrigation and domestic purposes.

The trial court found:

"That ever since the year 1914 the taking of such water, development, care and maintenance of the water course and the water system, herein described, and the exercise of the easement rights of ingress and egress have been open, notorious, adverse and continuous as to defendants [who acquired interest in their land in 1953] and their predecessors in title and all the world and plaintiffs have at all times since said

date claimed to have the exclusive right to such waters, exclusive ownership of said water system, and the absolute right of ingress and egress upon, over, under, along, in and across the portion of defendants' land upon which the same is located . . . that said property rights of plaintiff are appurtenant to plaintiffs' land . . . ."

In 1915, a predecessor in interest of defendant objected to the use of the water. Whereupon, a co-owner with plaintiff (his brother-in-law) recorded a certain notice of water appropriation in the auditor's office of King county, purportedly in compliance with the then existing statutes. No other adverse claim was made against plaintiff's use of the water until defendant attempted to interfere with the water system, which action caused plaintiff to commence this proceeding to quiet title therein and restrain defendant.

The facts found by the trial court are substantially as we have outlined them. Defendant has assigned error to every finding of the trial court, except the first four, which involve admitted facts or formal matters not determinative of the issues. Specific errors are not pointed out; on the contrary, it is merely stated that the findings of fact are not supported by the evidence.

In *Knatvold v. Rydman*, 28 Wn. (2d) 178, 183, 182 P. (2d) 9 (1947), this court said:

"The assignments that the trial court erred in making fourteen findings of fact, without any attempt to show wherein the findings were erroneous or lacked evidenciary support, is an invitation to us to search the record and see if we can find any error. It is not our function or duty to search the record for errors, but only to rule as to errors specifically claimed. *Bristol v. Streibich*, 24 Wn. (2d) 657, 167 P. (2d) 125."

However, a study of the record convinces us that there was ample evidence to support every finding of fact made by the trial court.

We cannot agree with defendant's contentions (a) that plaintiff's use was neither hostile nor exclusive; (b) that plaintiff did not intend to hold adversely; (c) that there can be no adverse use of wild, vacant, and unoccupied land;

and (d) that plaintiff abandoned the system when he established a new channel.

■ Adverse user is such use of property as the owner himself would exercise, entirely disregarding the claims of others, asking permission from no one, and using the property under a claim of right. Hostile use of real property by an occupant or user does not import ill will, but imports that the claimant is possessing or using it as owner, in contradistinction to possessing or using the real property in recognition of or subordinate to the title of the true owner.

■ The evidence of plaintiff's use of the water and water system since 1914 meets the test of being both adverse and hostile.

■ Occasionally, a surplus of water was not used by plaintiff but flowed to the river. From this, defendant argues that plaintiff's use was not exclusive. The facts and the law do not justify this conclusion.

"The terms 'exclusive' and 'uninterrupted' probably represent the same thing in this connection; namely, that to the extent of the right claimed, the claimant must not have shared the use with the true owner, nor suffered any act of dominion by him, such as an interruption." Wiel, Water Rights in the Western States, Vol. 1 (3d ed.) § 584, p. 630.

■ Defendant can find no solace in the fact that plaintiff and his wife testified that they laid no claim to ownership of any of defendant's *land*. In his testimony, plaintiff carefully preserved his claim to the water right.

"This is one of those cases in which it may be said that 'actions speak louder than words.' By exercising full dominion and control over the strip for more than twenty years, during which time they took the crops from the land, the appellant and his predecessors *clearly evinced their intention to claim the strip* as against the whole world, including the owner of the legal title." *O'Brien v. Schultz,* 45 Wn. (2d) 769, 781, 278 P. (2d) 322 (1954).

■ While it is true that the nature of the property may be a consideration in determining whether a prescriptive right therein has been acquired by open, notorious, continuous, exclusive, hostile, and adverse user, it does not follow,

as a matter of law, that a prescriptive right cannot be acquired in vacant, unimproved, unused, wild, and uninhabited land. Other elements being established,

" . . . the use must at least be such as to convey to the absent owner *reasonable notice* that a claim is made in hostility to his title." *Watson v. County Com'rs of Adams County*, 38 Wash 662, 665, 80 Pac. 201 (1905). (Italics ours.)

The evidence supports the conclusion that the use of the water and the maintenance of the water system by plaintiff, at least since 1914, gave such notice.

Finally, defendant urges that the plaintiff has abandoned the water system. He relies upon these facts:

(1) Just prior to this action, defendant interfered with the spring by bulldozing a basin, which diverted the flow. In order to restore the system, it was necessary for the plaintiff to make a new channel for a short distance.

(2) For the past few years, plaintiff supplemented the water supply for one of the houses on his property from a second spring on defendant's land.

Neither of these facts support a conclusion that plaintiff had abandoned the water system. The first was made necessary by defendant's own actions and resulted in this proceeding; the second simply supplemented or added to the existing system.

We do not find it necessary to pass on the legal sufficiency of the notice of appropriation of water, recorded in 1915. It is sufficient to note that it is a tangible manifestation of plaintiff's intention to claim the water and water system by adverse user.

The judgment is affirmed.

MALLERY, SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.