[No. 46852-4. En Banc. December 31, 1980.]

SHANE D. DUNBAR, *Respondent,* v. HERBERT O. HEINRICH, ET AL, *Petitioners.*

*Rudolf V. Mueller* and *J. Robert Leach,* for petitioners.

*Arnold M. Young* and *Jones & Young,* for respondent.

WILLIAMS, J.—This case requires us to resolve the question whether a person's erroneous belief that property is publicly owned precludes him or her from claiming adverse use of that property for purposes of acquiring a prescriptive easement. We hold that adverse use must be established by the acts, not the subjective beliefs, of a claimant, and we accordingly affirm the Court of Appeals.

In 1966, respondent Shane Dunbar began building a residence on property which he had purchased some years earlier. He gained access to his property by driving on a road which he believed to be a public right–of–way. Sometime between 1970 and 1972, respondent learned that the road was on property owned by a private investment company. He continued to use the road on a daily basis to reach his residence, neither requesting nor being refused permission to use it. Nor was he excluded from the road at any time prior to trial.

In April 1977, petitioners Herbert and Charlotte Heinrich purchased the property, including the roadway, from the private investment company. Respondent then initiated this action against petitioners, seeking to obtain a prescriptive easement over the west 100 feet and south 30 feet of

their property, which was the portion he had been using as a roadway to his property. Initially, the trial court granted a temporary injunction restraining petitioners from interfering with respondent's use of the road.

At trial, the court granted a nonexclusive permanent prescriptive easement to respondent. In addition, in a subsequent hearing on petitioners' violation of the temporary injunction, the trial court awarded $250 in attorney fees to respondent. In a split decision, the Court of Appeals affirmed the trial court's grant of a prescriptive easement, but modified the judgment so as to eliminate the grant of attorney fees. *Dunbar v. Heinrich*, 25 Wn. App. 10, 605 P.2d 1272 (1979). Petitioners ask us to review only that portion of the decision concluding respondent has shown adverse use for the required amount of time.

In order to obtain a prescriptive easement, a claimant must prove the following elements: (1) use adverse to the right of the servient owner, (2) open, notorious, continuous, and uninterrupted use for the entire prescriptive period, and (3) knowledge of such use by the owner at a time when he was able to assert and enforce his rights. *Mood v. Banchero*, 67 Wn.2d 835, 841, 410 P.2d 776 (1966); *Gray v. McDonald*, 46 Wn.2d 574, 578, 283 P.2d 135 (1955); 1 Washington State Bar Association, *Real Property Deskbook* § 13.12, at 13–7 (1979). The period required to establish a prescriptive easement is 10 years. *Mountaineers v. Wymer*, 56 Wn.2d 721, 722, 355 P.2d 341 (1960); *cf.* RCW 4.16.020.

Petitioners contend that respondent failed to establish a prescriptive easement because he did not establish the requisite adverse use. This is so, petitioners argue, because the record clearly demonstrates that for part of the 10–year period respondent believed the road was a public right-of-way. Accordingly, they conclude, the trial court's finding of adversity is not supported by substantial evidence. *See Petersen v. Port of Seattle*, 94 Wn.2d 479, 618 P.2d 67 (1980); *Peeples v. Port of Bellingham*, 93 Wn.2d 766, 613 P.2d 1128 (1980).

We have previously explained that, for purposes of establishing a prescriptive easement, adverse use is:

> [S]uch use of property as the owner himself would exercise, entirely disregarding the claims of others, asking permission from no one, and using the property under a claim of right. Hostile use of real property by an occupant or user does not import ill will, but imports that the claimant is possessing or using it as owner, in contradistinction to possessing or using the real property in recognition of or subordinate to the title of the true owner.

*Malnati v. Ramstead,* 50 Wn.2d 105, 108, 309 P.2d 754 (1957). *Accord, Cuillier v. Coffin,* 57 Wn.2d 624, 358 P.2d 958 (1961); *Roediger v. Cullen,* 26 Wn.2d 690, 713, 175 P.2d 669 (1946).

In this case, the trial court decided, and the Court of Appeals agreed, that respondent's subjective belief that the property was public was irrelevant. Rather, respondent's conduct in using the road, an objective standard, was the measure employed by the court to establish the required adversity for the prescriptive period. This question is apparently one of first impression in the Washington courts.

In cases concerning the analogous doctrine of adverse possession, it has been held that the element of adversity is not shown if the claimant exercised dominion over the disputed land in the mistaken belief that the property belonged to the government. *Thorsteinson v. Waters,* 65 Wn.2d 739, 748, 399 P.2d 510 (1965); *Jackson v. Pennington,* 11 Wn. App. 638, 645, 525 P.2d 822 (1974). Thus, this element may include some subjective components. The reason for the rule is apparently that the use of lands which one believes are public is knowingly subservient to the public right of ownership. Because a claimant recognizes the government's *superior paper title,* he or she admittedly does not hold possession hostile or adverse to the government. It follows that a claimant cannot possess the property adversely to the true owner during that interval. *McNaught–Collins Improvement Co. v. May,* 52 Wash.

632, 636, 101 P. 237 (1909); *Skansi v. Novak,* 84 Wash. 39, 45, 146 P. 160 (1915).

Petitioners urge that several Washington cases support their contention that the element of adversity should be measured by the same standard in both adverse possession and prescriptive easement cases. The cases cited, however, do not appear to support petitioners' interpretation. In *Cuillier v. Coffin, supra,* a prescriptive easement case in which adverse use was the issue, the court did not discuss the user's subjective intent to use or possess the property, but referred only to the objective acts of the users. Similarly, *Northwest Cities Gas Co. v. Western Fuel Co.,* 13 Wn.2d 75, 123 P.2d 771 (1942), did not consider the claimant's subjective state of mind regarding the subject property and his use of it. Although the court used the words "hostile intent", it listed only objective factors in reaching its conclusion that the claimant had used the property adversely:

> This leaves, for determination, only the question as to whether or not the evidence was sufficient to prove that the user of the land by respondent and its predecessor in title was *adverse* to [appellant's predecessor in title]. We arrive at a decision of that question by considering the facts and circumstances in connection with the user of the land.
>
> In the first place, the *acts* of . . . respondent's predecessor in title, constituted more than a mere use of the land for occasional travel over an undefined route. On the contrary, its *acts* were of such a nature as to indicate a hostile intent. The company deliberately *laid out a definite road* across the premises; it *improved the road* and *made repairs* from year to year; it *used the road regularly for hauling heavy loads of coke from its plant*; and, in addition, *it encouraged the public to use that method of ingress and egress* to and from its premises. In short, [respondent's predecessor] made the same use of appellant's land, to the extent noted, as it would have made if the land had been its own.

(Some italics ours.) *Northwest Cities Gas Co.,* at 90–91.

Other cases support respondent's view that Washington courts have in fact employed an objective standard to determine hostility in prescriptive easement cases. *See, e.g., Hughes v. Boyer,* 5 Wn.2d 81, 87–88, 104 P.2d 760 (1940), where the claimant had cut off a roadway owned by appellants for his own use. At trial, he testified that he wanted to use the road, but "if somebody asked me to get off I would get off". *Hughes,* at 87. The court explained:

> It is not essential that there should be proof that he made oral declarations of claim of title. It is enough if the proof shows that *he so acted as to indicate clearly* that he did claim title to the roadway. . . .
>
> . . .
> . . . Feely's intent during the time he used the roadway is better made known *by his then conduct* than by his testimony at the trial of this cause that "if somebody asked me to get off I would get off."

(Italics ours.) *Hughes,* at 87–88. Similarly, the court explained in finding a prescriptive easement in *Wasmund v. Harm,* 36 Wash. 170, 178–79, 78 P. 777 (1904):

> Where the inquiry is as to the intent of a person at a particular time, *such intent is better made known by his conduct* at the time in question, than by his subsequent declarations as to what his intent then was. The examination of the respondent was directed to ascertain his intent from his conduct, and it seems to us that *it matters little that he was not asked the direct question concerning his intent* while using the way.

(Italics ours.) *And see Smith v. Breen,* 26 Wn. App. 802, 614 P.2d 671 (1980).

In fact, our research reveals no prescriptive easement case in Washington which employs a subjective standard to prove adverse use.

Other jurisdictions which have considered this question have concluded that the subjective standard of hostility in the law of adverse possession should not be applied by analogy to the element of hostility in prescriptive easement cases. In *Flynn v. Korsack,* 343 Mass. 15, 175 N.E.2d 397 (1961), claimants and their predecessors used a strip of

their neighbor's land as a driveway continuously from 1927 to 1954, when the true owners erected a fence to prevent further use. In affirming the trial court's finding of a prescriptive easement, the Supreme Judicial Court of Massachusetts said with respect to the element of adversity:

That the uncommunicated mental attitude of the possessor is irrelevant where his acts import an adverse character to his holding is shown by cases involving disputed boundaries where the possessor intends to hold without intending to deprive any other of what is rightfully his. In *Van Allen v. Sweet,* 239 Mass. 571, [132 N.E. 348 (1921)] a boundary case, the possessor was held to have acquired rights by prescription to a strip of land despite her statement to the plaintiff 'I do not want anything not belonging to me.'" *Ottavia v. Savarese,* 338 Mass. 330, 334. . . . We are of the opinion that, despite Mrs. Brewer's statement subsequently made, that "she didn't do it deliberately," *her actual use of the strip for fourteen years without permission of the true owner constitutes a claim of right* in accordance with the principle stated.

(Italics ours.) *Flynn,* at 18–19. *See also Ottavia v. Savarese,* 338 Mass. 330, 334, 155 N.E.2d 432 (1959).

The Minnesota Supreme Court has held that a belief that the claimant had a legal right to use the property is not determinative of hostility; rather,

[a] possession that is adverse for the required prescriptive period will ripen into title by operation of law, regardless of the good or bad faith of the disseizor or whether he claimed a legal right or avowed himself a wrongdoer. It follows that the parol conveyance of an easement [which is invalid for any reason] will, *if followed by an adverse user for the prescriptive period,* establish an easement by prescription.

(Footnote omitted.) *Alstad v. Boyer,* 228 Minn. 307, 315, 37 N.W.2d 372 (1949). *And see* 5 Restatement of Property § 458, comment *e* (1944); 2 *American Law of Property* § 8.54 (A.J. Casner ed. 1952); 4 H. Tiffany, *Real Property* § 1197 (3d ed. 1975).

We conclude that there is little persuasive precedent for applying a subjective standard of adverse use in prescriptive easement cases. The gravamen of adversity in such cases is whether the user has occupied the property in a manner which is adverse to the true owner. *Malnati v. Ramstead,* 50 Wn.2d 105, 309 P.2d 754 (1957). Although subjective intent may have some relevance in an adverse possession case where the user claims title,[1] the claim in a prescriptive easement case is merely to use which could have been prevented by the rightful owner. *Malnati,* at 108. We therefore hold that adversity is to be measured by an objective standard; that is, by the objectively observable acts of the user and the rightful owner.

The following objective facts appear to support the trial court's determination that respondent's use was adverse: (1) respondent broke in the subject roadway as a "crude driveway" when he purchased his property in 1963; (2) he never sought permission to use the road; (3) he was never granted permission by anyone to use it; (4) the property in question was specifically excepted from respondent's 1963 deed, and respondent testified he never claimed legal ownership; (5) respondent continued for longer than the prescriptive period to use the roadway for ingress and egress to his property, and no one ever sought to prevent his use until the present dispute arose in 1977; (6) in 1972, respondent wrote to petitioners' predecessor in interest, the Emerson Investment Company, indicating an interest in

---

[1]It has been argued that subjective intent is confusing in application and should be abandoned even in adverse possession cases:

> All, or perhaps even most, states have, and the common law of England seems to have, had no such element to adverse possession. Adverse possession revolves around the character of possession, and it is difficult to see why a man's secret thoughts should have anything to do with it. Maybe the idea originated in a confusion of permission or agreement between owner and possessor with unilateral intent in the possessor's mind. Whatever the reason, the court could yet perform a service by doing away with any requirement of subjective intent, negative or affirmative.

(Footnote omitted.) Stoebuck, *The Law of Adverse Possession in Washington,* 35 Wash. L. Rev. 53, 80 (1960).

purchasing the property and seeking a price quotation. There was no evidence that respondent ever took any subsequent action. He testified, "I ended up not having any further contact, and let it die out"; and (7) after the 1972 letter, he continued to use the road as before.

It is plain that there is substantial evidence to support the trial court's finding that respondent's use was adverse to the petitioners. The record reveals without dispute that respondent used the road in derogation of the rights of petitioners' predecessor in interest at least from 1966 to 1977. It follows that the respondent has acquired a prescriptive easement in the subject road which runs over the petitioners' property.

The decision of the Court of Appeals is therefore affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.