753 P.2d 290

**Canuto R. CARDENAS and Lucia Cardenas, husband and wife, Plaintiffs–Appellants,**

v.

**Helen KURPJUWEIT, Defendant–Respondent.**

No. 16397.

Court of Appeals of Idaho.

April 1, 1988.

Petition for Review Granted June 17, 1988.

Ismael Chavez, Caldwell, for plaintiffs-appellants.

Howard I. Manweiler, Boise, for defendant-respondent.

SWANSTROM, Judge.

This dispute concerns the rights, as among adjoining landowners, to the use of a gravel driveway existing on the property of Canuto and Lucia Cardenas. The Cardenases appeal from the district court's judgment granting their neighbor, Helen Kurpjuweit, a private prescriptive easement in the driveway. They also appeal the district court's award of attorney fees to Kurpjuweit. The dispositive issue is whether the district court erred in granting a private prescriptive easement in the driveway based upon Kurpjuweit's claim of right. We reverse the judgment.

The driveway in question is shown in the following sketch.

The easement granted by the trial court is approximately 40 feet wide by 100.89 feet long. The easement's dimensions are indicated by the dashed line. The strip between the Kurpjuweit property and the Cardenas property apparently is owned by the City of Nampa as a ten foot right-of-way for water lines. Approximately thirty feet of the Cardenas property is subject to the easement, as shown by the sketch.

The driveway has a rather involved history. In the early 1900's the area of the driveway was platted as an extension of 17th Avenue North. Over the years, apparently, the driveway area has been erroneously described and diagramed on different city and county plats. In 1936 Canyon County obtained a tax deed on the property now owned by the Cardenases. In 1939 a quiet title action was commenced by the then owner of the Cardenas property. The City of Nampa was a named defendant, as was Canyon County. Title was quieted in the property owner. The property's legal description correlates with the boundary lines as shown in the sketch. Nevertheless, the City of Nampa maintained the gravel driveway until sometime in the early 1970's. Recently, the City of Nampa successfully defended against a mandamus ac-

tion initiated by another adjoining landowner, Hazel Elliott, who is not a party to the present action. The writ was sought in an effort to have the City of Nampa declare the driveway a public road. As to Hazel Elliott, the action was dismissed without prejudice.

Hazel Elliott and Kurpjuweit took up their present residences in 1939 and 1957 respectively. From that time, until 1983, both have continuously and uninterruptedly used the driveway for egress and ingress. Helen Kurpjuweit and Hazel Elliott testified at trial that through the years their family members and visitors have used the driveway for access to their homes. Hazel Elliott further testified that for many years her laundry business clientele used the driveway to reach her home. Until 1983, the motorized mail carrier used the driveway to deliver mail to the Kurpjuweit and the Elliott homes. Both homes front on the driveway. The addresses are 503 and 507 17th Avenue North. Kurpjuweit based her claim of right to use the driveway on two grounds. First, her continuous, open use of the driveway for the prescriptive period. Second, because her property deed indicates a road is appurtenant to her land, she believed that the driveway was a public road.

The Cardenases took possession of their property in 1974. From then until 1983, they used the driveway in a like manner as Kurpjuweit and Elliott. In December 1982 the Cardenases first asserted exclusive control over the driveway by setting a railroad tie upright in the driveway entrance. The tie was removed. In the spring of 1983 the Cardenases erected a fence along what they asserted to be their property boundary. This fence barred Kurpjuweit and Elliott from making any use of the driveway. Julius Kurpjuweit, Helen's son, took down that portion of the fence which interfered with the Kurpjuweits' use of the driveway. That portion has remained down.

The Cardenases initiated this action seeking damages and injunctive relief. By way of answer and counterclaim, Kurpjuweit claimed the existence of a prescriptive easement. Trial proceeded on this issue. The trial court concluded that a private prescriptive easement had been shown. The extent and scope of the easement was determined by its historical use, testimony as to present approximate width, and exhibits demonstrating prior and present use and conditions. The court awarded attorney fees to Kurpjuweit without explanation but concluded that the action was defended frivolously and unreasonably.

The issue of whether a private prescriptive easement has been shown presents entwined questions of law and fact. We defer to the facts found by the trial court that are supported by substantial and competent evidence. I.R.C.P. 52(a). We freely review the conclusions of law to determine whether the trial court properly applied the legal requirements for a private prescriptive easement to the facts as found. *See Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). *See also Standards of Appellate Review in State and Federal Courts*, IDAHO APPELLATE HANDBOOK § 3.2.2 (Idaho Law Foundation, Inc. 1985).

In order to establish a private prescriptive easement a claimant must present reasonably clear and convincing evidence of open, notorious, continuous, uninterrupted use for the statutory prescriptive period, under a claim of right, and with the actual or imputed knowledge of the owner of the servient estate. *West v. Smith*, 95 Idaho 550, 511 P.2d 1326 (1973); *Melendez v. Hintz*, 111 Idaho 401, 724 P.2d 137 (Ct.App. 1986). The prescriptive period in Idaho is five years. I.C. § 5–203.

The Cardenases assert that a private prescriptive easement in a roadway cannot be established where the claimant believes that the roadway is public. *See Cusic v. Givens*, 70 Idaho 229, 215 P.2d 297 (1950); *Hall v. Strawn*, 108 Idaho 111, 697 P.2d 451 (Ct.App.1985). This argument is not entirely accurate. The subjective belief of the claimant is not controlling; rather, the focus is upon the nature of the use exercised by the claimant. Where the same use has been exercised indiscriminately by the public or by others in com-

mon, the individual claimant is prevented from claiming an exclusive use in the sense that it is proprietary in nature and exercised independently of the rights of all others. *Hall v. Strawn, supra.*

■ Mere use alone is insufficient. The claimant must perform some additional independent act signifying to the owner that there is an adverse user's claim. *Simmons v. Perkins,* 63 Idaho 136, 118 P.2d 740 (1941). Acts signifying adverse use include performing some maintenance or improvement upon the land in question, using the land in a manner openly against the owner's use, or expressing to the owner a claim of right to use his land.

■ A "claim of right" signifies use without recognition of the rights of the servient estate's owner. *West v. Smith, supra.* The general rule is that proof of open, notorious, continuous and uninterrupted use for the statutory period raises the rebuttable presumption that the use was adverse and under a claim of right. *Id.* Nonetheless, as stated in *Simmons:* "The use of a driveway in common with the owner and the general public, in the absence of some decisive act on the user's part indicating a separate and exclusive use on his part negatives any presumption of individual right therein in his favor." 63 Idaho at 144, 118 P.2d at 744.

Here, the pivotal question is the nature of Kurpjuweit's claim of right. Kurpjuweit based her use upon the belief that the driveway was a public road. She also presented evidence that her claim of right rested upon her long term use.

■ We are unable to divorce the two grounds urged by Kurpjuweit as the basis of her claim of right. The evidence at trial, especially Kurpjuweit's own testimony, demonstrated her long term use was predicated on the common use of the driveway by others, including the property owner. There is no evidence suggesting Kurpjuweit's claim of right arose independently of such use. Moreover, Kurpjuweit offered no evidence of acts she performed which signified to the owner her adverse claim. Further, the absence of such a decisive act

negatives any presumption in Kurpjuweit's favor. Indeed, it leaves intact the contrary presumption, based on *Simmons,* that Kurpjuweit's participation in a common public use of the driveway was not adverse in the sense necessary to establish a prescriptive easement. This presumption, in turn, is not rebutted by the stipulated fact that express permission had not been given by the Cardenases or by their predecessor.

Consequently, the district court erred as a matter of law in concluding that Kurpjuweit's use established a claim of right. The district court's judgment declaring a private prescriptive easement is accordingly reversed, including the award of attorney fees to Kurpjuweit. Costs to the Cardenases. Neither side has requested attorney fees on appeal.

WALTERS, C.J., concurs.

BURNETT, Judge, specially concurring.

Although I join in today's opinion, I acknowledge that it contains some language arguably contrary to a statement found in *French v. Sorensen,* 113 Idaho 950, 751 P.2d 98 (1988). In that case the Supreme Court quoted and adopted the following excerpt from a district judge's memorandum decision:

> [Plaintiffs assert] a rather straightforward claim of prescriptive right of way across defendants' property. However, here plaintiffs' use of the road upon the defendants' ranch was *based upon their conception that the road was a public road. If they thought it a public road,* their use could not be proprietary in nature.

113 Idaho at 958, 751 P.2d at 106 (emphasis added). In contrast, today's opinion contains the following language: "The subjective belief of the claimant is not controlling; rather, the focus is upon the nature of the use exercised by the claimant." *Ante,* 114 Idaho at 82, 753 P.2d at 293.

With due respect to our Supreme Court, I submit that today's language better states the law. The excerpt quoted by the Supreme Court in *French* was followed by a citation to three earlier decisions: *Hall v.*

*Strawn,* 108 Idaho 111, 697 P.2d 451 (Ct. App.1985); *Cusic v. Givens,* 70 Idaho 229, 215 P.2d 297 (1950); and *Simmons v. Perkins,* 63 Idaho 136, 118 P.2d 740 (1941). I will discuss these decisions in chronological order.

*Simmons* involved a fact pattern similar to the instant case. The plaintiffs asserted a prescriptive easement coinciding with what appeared to be an alley across the defendants' property. This "alley" had been used regularly by the defendants and by members of the general public, including the plaintiffs. The Supreme Court noted that absent an express grant of permission, the regular crossing of another's property is generally presumed to be an adverse use.[1] However, as an exception to this general rule, the *Simmons* court held that where the owner "constructs a way over [the land] for his own use and convenience, the mere use thereof by others which in no way interferes with his use will be presumed to be by way of license or permission." 63 Idaho at 144, 118 P.2d at 744. The Court further said that a claimant who uses a road in common with the public, and who does not undertake any "decisive act ... indicating a separate and exclusive use on his part," falls within this presumption of permission. *Id.* Accordingly, his use is not adverse to the landowner and cannot ripen into a prescriptive easement.[2]

In *Cusic v. Givens, supra,* the Supreme Court applied the *Simmons* principle in a rural setting. The plaintiffs asserted a prescriptive easement across the defendants' farm, following the route of what appeared to be a public road. The road had been used not only by the defendants and their predecessor but also by the plaintiffs, their predecessor, and other members of the public. The Supreme Court noted that this use had been "entirely permissive." 70 Idaho at 231, 215 P.2d at 298. The

Court went on to observe that the record contained no other indication of adverse use and that the plaintiffs had used the road simply because they thought it was public. The Court concluded that "[a] prescriptive right cannot be acquired by such use." *Id.* The Court cited *Simmons* as well as a host of other authorities discussing actual or presumptive permission.

In retrospect, it is unfortunate that *Cusic* juxtaposed a reference to the plaintiffs' belief in a public road with the ambiguously worded conclusion that a prescriptive right cannot be acquired by "such use." In full context, it is apparent that "such use" was intended to mean the "entirely permissive" use previously mentioned by the Court. This intended meaning is reinforced by the Court's citation of *Simmons* and other authorities dealing with permissive uses.

Nevertheless, as a result of such juxtaposed and ambiguous language, *Cusic* came to be regarded as the source of a new doctrine—that the adversity of a claimant's use may be defeated by his own belief that a road is public. In *Hall v. Strawn, supra,* a special panel of the Court of Appeals quoted at length from *Cusic,* giving emphasis to the juxtaposed and ambiguous language. Although much of *Hall*'s analysis was consistent with *Simmons,* *Hall* did not specifically mention the presumption of permissiveness arising from common usage of an existing roadway. Rather, *Hall* focused upon the plaintiff's belief that he had been using a public road. On this basis the Court concluded that the plaintiff had not acquired a prescriptive easement along the road. *Hall* set the stage for the declaration in *French v. Sorensen, supra,* that no prescriptive easement can arise from a use based upon the conception that a road is public.

1. This general presumption has been reaffirmed in *West v. Smith,* 95 Idaho 550, 511 P.2d 1326 (1973). The *West* opinion also recognizes two exceptions. One of the exceptions, relating to wild and unenclosed lands, is not applicable to the instant case. The other exception, relating to common usage of an existing roadway, is based upon the *Simmons* case discussed here.

2. Conversely, a claimant who alters or enlarges an existing roadway is entitled to the general presumption that his use is adverse. *Melendez v. Hintz,* 111 Idaho 401, 724 P.2d 137 (Ct.App. 1986).

As this chronology shows, a misunderstanding caused by unfortunate language in *Cusic* has produced the curious doctrine that a claimant's subjective state of mind may determine whether he is entitled to a prescriptive easement. This state of mind doctrine is illogical. The "adversity" of à claimant's use lies in its derogation from the exclusive rights of the landowner; it does not lie in the claimant's state of mind. Regardless of the motive with which a prospective claimant crosses a landowner's property, his use derogates from the landowner's rights unless the crossing is by permission, express or legally presumed. Moreover, the state of mind doctrine creates a perverse incentive to offer contrived but virtually unrebuttable testimony. A sophisticated claimant, aware of the *Hall* and *French* decisions, would never admit having thought a road was public; he would simply testify that he used the road because he found it convenient.

Accordingly, I agree with today's opinion that the adversity of a claimant's use is determined not by his subjective belief but by the nature of the use itself. As the Washington Supreme Court has noted:

> [T]here is little persuasive precedent for applying a subjective standard of adverse use in prescriptive easement cases. The gravamen of adversity in such cases is whether the user has occupied the property in a manner which is adverse to the true owner. Although subjective intent may have some relevance in an adverse possession case where the user claims title, the claim in a prescriptive easement case is merely to [a] use which could have been prevented by the rightful owner. We therefore hold that adversity is to be measured by an objective standard; that is, by the objectively observable acts of the user and the rightful owner.

*Dunbar v. Heinrich*, 95 Wash.2d 20, 622 P.2d 812, 815–16 (1980) (citations and footnote omitted).