IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

ANNE WHYTE, a married person on ) No. 69174-1-I
behalf of her marital community, )
)
Appellant, )
)
v. )
)
CHRISTOPHER JACK and PETRA ) UNPUBLISHED OPINION
JENNINGS and their respective )
marital community, ) FILED: September 3, 2013
)
Respondents. )
_____ )

VERELLEN, J. — Anne Whyte shares a driveway with Christopher Jack and Petra

Jennings (collectively Jack). The driveway is the sole means of ingress to and egress

from their houses on Mercer Island. Whyte brought claims against Jack for adverse

possession and prescriptive easement, which the court dismissed on summary

judgment. Whyte appeals, contending the trial court ignored genuine issues of

material fact and misapplied the legal standard governing both her claims. The trial

court properly dismissed the adverse possession claim because Whyte presented no

evidence of hostile use. The trial court properly dismissed the prescriptive easement

claim because Jack's predecessors permitted use of their driveway as a neighborly

accommodation. We affirm.

## FACTS

This property dispute arises out of the use of a shared driveway serving two adjacent parcels on Mercer Island. Anne Whyte purchased the north parcel[1] (Whyte parcel) in 2003 from June Skidmore. Skidmore owned the parcel from 1975 through the sale in 2003. Jack purchased the south parcel[2] (Jack parcel) in 2010 from the Moores, who lived there from 1990 through 2010.[3] The Moores purchased the parcel from the Gingriches in 1990, and the Gingriches purchased the parcel from the Skugstads in 1986. Before the Skugstads, the Christensons owned the parcel.

The shared driveway runs along the property line dividing the Whyte parcel, to the north, from the Jack parcel, to the south. The shared driveway has existed in its current form since at least 1975. In August of 1972, the then-owners of the two parcels entered into a declaration of joint use maintenance agreement and easement (easement agreement). Under the easement agreement, 15 feet on either side of the property line is subject to an "easement for the construction, improvement, repair and maintenance for roadway and utilities."[4] The easement agreement imposes on both parties and their successors and assigns a duty to "forever be required to maintain the road and utilities on said easement in a reasonable state of repair at all times, and any expense or cost thereof shall be borne equally by the beneficial owner or owners of

---

[1] The parties also refer to the north parcel as Lot 9.

[2] The parties also refer to the south parcel as Lot 8.

[3] Before Jack purchased the parcel, the Moores and Whyte had a strained relationship. The Moores obtained an antiharassment order against Whyte and painted a line along the property boundary. Jack then also obtained an antiharassment order against Whyte after the purchase.

[4] Clerk's Papers at 35.

said Lots 8 and 9."[5] The owners of the two parcels jointly constructed the shared driveway soon after recording the easement agreement. Most of the shared driveway is located within the 30-foot-wide easement boundaries. However, the end of the shared driveway curves south beyond the easement boundary onto the Jack parcel. The shared paved driveway then splits into a Y, with each branch continuing to the garage on each parcel. There is no change in the paving where the shared paved driveway ends and the paved individual driveways begin. Until very recently, when Jack installed a curb along the southern edge of the easement boundary, there was no other demarcation of the shared driveway and Jack's individual driveway.

There are two distinct pieces of land in dispute. The first piece in dispute is a small sliver of land Whyte contends she adversely possessed and is located south of her property line, within the part of the Jack parcel burdened by the easement agreement, but north of the paved shared driveway. In 1975, when Skidmore purchased the Whyte parcel, there was no landscaping along the property line. Skidmore installed a rockery shortly after she moved in 1975,[6] and then planted some grasses and ground cover just north of where the driveway curved to the south. There were two trees already existing near the rockery. Sometime after 1991, Skidmore also installed a sprinkler system near the rockery, and, over the years, planted some flowering bushes.[7] Skidmore never weeded the area because the groundcover made

---

[5] Clerk's Papers at 35.

[6] It appears from her deposition that the "rockery" included a few "good sized boulders." Clerk's Papers at 124-26. Photograph exhibits provide some reference as to the limited size of the rocks.

[7] Mrs. Skidmore testified that after her husband died in 1991, she had the sprinkler system installed.

3

weeding unnecessary. Skidmore did not ask permission of the prior owners of the Jack parcel to build or maintain the rockery and vegetation.

The second piece in dispute is another small sliver over which Whyte contends she has a prescriptive easement. The disputed land is located just south of the easement boundary, exclusively on the Jack parcel. When Skidmore purchased the Whyte parcel, the paved driveway already existed in its current form. From 1975 through the 2003 sale to Whyte, Skidmore used the driveway on a daily basis. Mr. Skidmore, Mrs. Skidmore and their son would sometimes drive onto the Jack parcel when entering or exiting their individual driveway. They would frequently back out of their driveway and onto the Jack parcel to turn around before exiting the shared driveway.[8] They would also sometimes back into a different area of the shared driveway, closer to the rockery and within the easement boundaries, to turn around before exiting the shared driveway.

Mrs. Skidmore testified that her family was "very good friends" with the Skugstads, the owners of the Jack parcel in the late 1970s.[9] Skidmore never asked the Skugstads whether her family could use their property as a turnaround. Skidmore did not ask permission from any of the other subsequent owners of the Jack parcel (the Moores, or the Gingriches) to use the portion of the driveway to the south of the easement boundary.[10]

---

[8] Whtye did not designate for inclusion in the clerk's papers the exhibit to Skidmore's deposition where Mrs. Skidmore indicated with arrows the precise direction and location of the turnaround. See Clerk's Papers at 131.

[9] Clerk's Papers at 144.

[10] In 2010, Jack installed a concrete curb and planting strip along the southern boundary of the easement. The curb is one foot tall and six inches wide. Whyte complained to the city, but the city determined the barrier did not violate any applicable

Whyte filed a complaint seeking declaratory judgment regarding the adverse possession and prescriptive easement theories, trespass and damages to property, injunctive relief, and damages. Jack moved for summary judgment on the adverse possession and prescriptive easement claims. The trial court granted Jack's motion.

## DISCUSSION

We review summary judgment determinations de novo, engaging in the same inquiry as the trial court.[11] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[12] This court considers the facts and all reasonable inferences from the facts in the light most favorable to the nonmoving party.[13] If reasonable minds could reach but one conclusion from all the evidence, summary judgment is correct.[14] Bare assertions that a genuine issue of material fact exists will not defeat summary judgment in the absence of actual evidence.[15]

*Adverse Possession*

To establish ownership of a piece of property through adverse possession, a claimant must prove that possession of the property was "(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, (4) hostile and under a claim of right, (5) for

---

code. While the barrier limits the area of paved roadway on the Whyte parcel to approximately six feet, the total accessible area between the barrier and the southern boundary of the new rockery is just shy of ten feet.

[11] Cole v. Laverty, 112 Wn. App. 180, 184, 49 P.3d 924 (2002).

[12] Id.

[13] Id.

[14] Harberd v. City of Kettle Falls, 120 Wn. App. 498, 507-08, 84 P.3d 1241 (2004).

[15] Id. at 508.

5

a period of 10 years."[16] Title automatically vests in a claimant who satisfies the elements for the 10-year period.[17] "'Where there is privity between successive occupants holding continuously and adversely to the true title holder, the successive periods of occupation may be tacked to each other to compute the required 10-year period of adverse holding.'"[18] Subjective belief in ownership does not establish the hostility element.[19] Rather, satisfaction of the adversity element requires the claimant's use to be hostile to the title owner's interest.[20] "Adverse possession is a mixed question of law and fact: whether the essential facts exist is for the trier of fact, but whether the facts constitute adverse possession is for the court to determine as a matter of law."[21]

Whyte argues that the court ignored genuine issues of material fact pertaining to adverse use.[22] Skidmore, Whyte's predecessor, installed rocks in 1975 just north of

---

[16] Shelton v. Strickland, 106 Wn. App. 45, 50, 21 P.3d 1179 (2001).

[17] Gorman v. City of Woodinville, 175 Wn.2d 68, 72, 283 P.3d 1082 (2012).

[18] Lilly v. Lynch, 88 Wn. App. 306, 312-13, 945 P.2d 727 (1997) (quoting Roy v. Cunningham, 46 Wn. App. 406, 413, 731 P.2d 526 (1986)).

[19] Chaplin v. Sanders, 100 Wn.2d 853, 861, 676 P.2d 431 (1984).

[20] Herrin v. O'Hern, 168 Wn. App. 305, 311, 275 P.3d 1231 (2012).

[21] Lingvall v. Bartmess, 97 Wn. App. 245, 253, 982 P.2d 690 (1999).

[22] Whyte also contends the trial court applied an incorrect legal standard, subjecting her to a "heightened" standard of hostility. App. Br. at 25. The trial court analyzed Whyte's adverse possession claim in the context of the easement agreement because the portion of land Whyte seeks to adversely possess is located within the easement. Although we decline to analyze the adverse possession claim through the lens of the easement agreement, the trial court did not err by considering the easement agreement, nor did it impose a heightened burden. It simply noted that where a party (usually the servient estate owner) seeks to terminate an easement by adverse possession, courts must focus on the uses already contemplated by the easement in examining whether the hostility element is satisfied. Cole, 112 Wn. App. at 184 ("to start the prescriptive period, the adverse use of the easement must be

the driveway, and then planted grasses and ground cover. Two tall trees already existed near the rockery. Sometime after 1991, more than 10 years after the 1975 rockery installation, Skidmore installed a sprinkler system and planted a few flowering bushes. Skidmore never weeded the area, because the groundcover made weeding unnecessary.

Whyte relies chiefly on Maier v. Giske[23] and Lingvall v. Bartmess,[24] two cases in which the claimants had landscaped and continuously maintained the disputed land. In Lingvall, the court affirmed a grant of title by adverse possession over a triangle of land where the claimant had planted two trees, cleared the land of wild brush and shrubbery, landscaped, and consistently (and exclusively) mowed and maintained the land.[25]

In Maier, the court held the claimant had adversely possessed land where she had installed planks and built a berm on the disputed land, planted trees and shrubs between the planks, extensively landscaped, and maintained the area as her own.[26] The court noted, "Giske used the land in ways that would cause a reasonable person to assume she was the owner. . . . She treated the land as an owner, satisfying the 'hostility' element."[27] However, the appellate court affirmed the trial court's refusal to

---

clearly hostile to the dominant estate's interest [in the easement] in order to put the dominant estate owner on notice").

[23] 154 Wn. App. 6, 19, 223 P.3d 1265 (2010).

[24] 97 Wn. App. 245, 253, 982 P.2d 690 (1999).

[25] 97 Wn. App. at 248-49.

[26] 154 Wn. App. at 12.

[27] Id. at 19.

find the claimant had adversely possessed a different portion of land also at issue in the case because the claimant had only planted one tree and some other vegetation.[28]

Jack relies on Anderson v. Hudak, where the court held the claimant's planting of a row of trees and maintaining of the land around the trees was insufficient evidence of hostility.[29] There was no evidence that the claimant watered, pruned, trimmed or cared for the trees.[30] The court noted that in successful claims of adverse possession, "the parties furnish[ ] some evidence of usage," which "include[s] acts such as clearing land, mowing grass, and maintaining shrubs and plants."[31]

Jack rightly argues that Whyte's predecessor's use of the disputed adverse possession area—installing a rockery, planting a few bushes, and installing a sprinkler system next to existing trees and north of the jointly constructed shared driveway—does not constitute adverse use as a matter of law. While Skidmore's initial placement of the rockery and planting of grasses and shrubs in 1975[32] is consistent with Maier and Lingvall, Skidmore testified that she never maintained the area after the initial planting. All she did was plant a few more flowering bushes, and then, sometime after 1991, she installed a sprinkler system.[33] The intermittent and insubstantial planting over the years is insufficient as a matter of law to demonstrate a prima facie case of adverse use, because Skidmore never consistently used or maintained the land. Nor

---

[28] Id. at 20.

[29] 80 Wn. App. 398, 401-02, 404-05, 907 P.2d 305 (1995)

[30] Id. at 402.

[31] Id. at 404 (emphasis omitted).

[32] The record does not reflect a date certain on which the planting of grasses and shrubs occurred.

[33] The record does not contain a precise date on which the installation occurred, nor does it suggest how frequently Skidmore used the sprinkler system.

did Skidmore's use ever prevent Jack or his predecessors from using the land. When the original owners of the two parcels constructed the shared paved driveway, they avoided the area containing the preexisting trees. Skidmore's addition of ground cover, bushes and rocks to that same area where the existing trees already blocked ingress and egress was not a hostile use. Whyte depends on the use by Skidmore to establish the required 10 years of adverse use, but she fails to establish Skidmore's use was hostile. We affirm the trial court's grant of summary judgment to Jack on Whyte's adverse possession claim.

### Prescriptive Easement

Whyte also contends the court erred in granting summary judgment on her prescriptive easement claim. A prescriptive easement requires the claimant to prove "use of the servient land that is: (1) open and notorious, (2) over a uniform route, (3) continuous and uninterrupted for 10 years, (4) adverse to the owner of the land sought to be subjected; and (5) with the knowledge of such owner at a time when he was able in law to assert and enforce his rights."[34] A use is adverse when the claimant "uses the property as the true owner would, under a clam of right, disregarding the claims of others, and asking no permission for such use."[35] Use is not adverse if it is permissive.[36] Adverse versus permissive use is generally a question of fact, but where the essential facts are not disputed, a court may determine adversity as a matter of

---

[34] Drake v. Smersh, 122 Wn. App. 147, 151, 89 P.3d 726 (2004).

[35] Id.

[36] Id. at 152.

law.[37] Whyte contends the court erred by presuming her use of the driveway was permissive, and by ignoring genuine issues of material fact concerning hostile use.

In Drake v. Smersh, we clarified the circumstances in which the inference of permissive use applies: "In developed land cases, when the facts . . . support an inference that use was permitted by neighborly sufferance or accommodation, a court may imply that use was permissive and accordingly conclude the claimant has not established [the adversity element]."[38] On the other hand, in undeveloped land cases, courts may apply a presumption of permissive use.[39]

In Drake, the court concluded there was no reasonable inference to support permissive use where the disputed land was a driveway providing sole access to the claimant's lot, the claimant never asked the owner for permission or received express consent to use the driveway, and there was no "relationship between Massey [the claimant] and the Wallens [the owners] from which once could infer permissive use."[40]

The facts here support the inference that Whyte's predecessors' use of the land was permissive. First, unlike in Drake, the Skidmores had a very friendly relationship with the owners of the Jack parcel.[41, 42] The small portion of the Jack parcel over which

---

[37] Id.

[38] 122 Wn. App. 147, 154, 89 P.3d 726 (2004).

[39] Id. at 153-54 (clarifying the rule announced in Kunkel v. Fisher, 106 Wn. App. 599, 23 P.3d 1128 (2001) in which the court discussed the presumption of permissive use rather than the inference of permissive use in a developed land case).

[40] Id. at 154.

[41] Miller v. Jarman, 2 Wn. App. 994, 997, 471 P.2d 704 (1970) ("A friendly relationship between parties is a circumstance more suggestive of permissive use than adverse use.").

[42] Whyte argues the record does not contain evidence of Skidmore's relationship to the owners of the Jack parcel after Skugstad, who owned the land from

the Skidmores occasionally drove was not the sole area which the Skidmores used as a turnaround, nor was it the only means by which the Skidmores could enter or exit the driveway. To the contrary, the Skidmores sometimes used another portion of the shared driveway within the easement as a turnaround. Further, there is no evidence in the record that the Skidmore's use of the Jack parcel as a turnaround interfered with the use of the easement by the owners of the Jack parcel.[43] We conclude the record supports an inference of permissive use based on the evidence of neighborly accommodation.

The record also supports a determination as a matter of law that Whyte cannot establish adverse use. Adverse use is measured objectively based on the observable acts of the user and the rightful owner.[44] In Drake, we determined there was sufficient evidence[45] establishing adverse use where the claimant extended the driveway to his own property, maintained the driveway, and used it to bring in materials and

---

1987 through 2010, but Mrs. Skidmore testified she did not ask permission from Moore or Gingrich, either. See Clerks Papers at 144; Appellant's Br. at 20. Whyte has the burden as a respondent to a summary judgment motion to come forward with prima facie evidence of her claim. Young v. Key Pharm., Inc., 112 Wn.2d 216, 226, 770 P.2d 182 (1989). She cannot defeat summary judgment by bare assertions that a genuine issue of material fact exists. Harberd, 120 Wn. App. at 508 (quoting Trimble v. Wash. State Univ., 140 Wn.2d 88, 93, 993 P.2d 259 (2000)).

[43] Miller, 2 Wn. App at 997-98 (noting the claimant's use of the owner's driveway did not interfere with the owner's use, which also justified "the inference that such use . . . is with the permission of the owner").

[44] Dunbar v. Heinrich, 95 Wn.2d 20, 27, 622 P.2d 812 (1980).

[45] Drake was an appeal after a bench trial. Drake, 122 Wn. App. at 149.

equipment to build his home and garage.[46] Further, the claimant in Drake used the driveway as the sole access to his property.[47]

The Skidmores did not alter or maintain the disputed portion of land, as did the claimant in Drake. Nor is there any physical indication of the prescriptive easement area. Rather, from the time the road was jointly built, Whyte's predecessors used this area occasionally to turn around, but the use of the disputed area was not necessary for ingress and egress. Nor was use of this area the sole means by which to turn around their vehicles to exit the driveway. We conclude the Skidmores' insignificant and intermittent use of the driveway, coupled with undisputed evidence of neighborly cooperation, does not constitute adverse use as a matter of law.

Whyte relies on two cases, Smith v. Breen[48] and Washburn v. Esser[49] for the proposition that joint construction of a shared roadway constitutes adverse use. Jack correctly distinguishes these cases on the basis that the parties had not entered into a mutual easement agreement, as the parties did here.[50] Because the previous owners of the Whyte and Jack parcels had already created the mutual easement agreement, jointly built the shared driveway, and mutually used the shared driveway, the adversity in Smith and Washburn is not present here.

---

[46] Id. at 155.

[47] Id.

[48] 26 Wn. App. 802, 614 P.2d 671 (1980).

[49] 9 Wn. App. 169, 511 P.2d 1387 (1973).

[50] Smith, 26 Wn. App. at 806 (holding the mutual use of the shared driveway, which ran along the boundary line, ripened into mutual easements by prescription); Washburn, 9 Wn. App. at 171-73 (holding that use of a common beach access road running across the property of four adjoining landowners constituted adverse use, and affirming conclusion that a prescriptive easement had been created).

We affirm the trial court's summary judgment in favor of Jack on Whyte's prescriptive easement claim. As the prevailing party on appeal, Jack is entitled to costs on appeal under RAP 14.2.

WE CONCUR: