**FILED**
**MARCH 31, 2026**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CAROL MYERS LIVING TRUST, | ) | No. 40813-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BUTTERFIELD WATER COMPANY, | ) | |
| INC., a Washington corporation, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Butterfield Water Co., Inc. appeals after the trial court entered judgment in favor of the Carol Myers Living Trust. The judgment declared that two documents filed by Butterfield with the Department of Health (Department) in 2004 were void and that there is no sanitary control area (SCA) around the Butterfield community well as contemplated by WAC 246-290-135. The lack of an SCA could cause the Department to close the well, which would cause the community to be without potable water. Despite this, we conclude the trial court did not err. Yet, Butterfield has a possible solution, one that lies within the discretion of the Department.

No. 40813-2-III
*Carol Myers Living Tr. v. Butterfield Water Co., Inc.*

FACTS

In 1952, the Butterfield Suburban Homes community quitclaimed "20 feet square" of "Lot 20," Block 1, of the Butterfield Suburban Homes to Butterfield Water Company, Inc. (Butterfield).[1] Clerks Papers (CP) at 106. The deed described the land as the location of the existing well, pump building, and domestic water facilities. In addition, the deed transferred all of the above-described personal property to Butterfield. Soon after, the then-owners of Lot 20 quitclaimed to Butterfield the same real and personal property mentioned above, together with an easement over and across the lot for installation, maintenance, repair, and operation of pipelines used for delivering the water from the well to the community. At all times relevant here, the well has been classified as a Group A Community Water System, which is regulated by the Washington State Department of Health under chapter 246-290 WAC.

In 1992, Carol and Calvin Myers purchased Lot 20. In 1999, the Department of Health promulgated WAC 246-290-135, requiring water providers to maintain an SCA of at least 100 feet around wells:

---

[1] The phrase "20 feet square" is an odd phrase. We believe it means 20 feet by 20 feet, rather than a much smaller dimension of 20 square feet.

> (2)     SCA.
> (a)     The purveyor shall maintain an SCA around all sources for the purpose of protecting them from existing and potential sources of contamination.
> (b)     For wells . . . , *the minimum SCA shall have a radius of one hundred feet* (thirty meters) . . . , unless engineering justification demonstrates that a smaller area can provide an adequate level of source water protection.  The justification shall address geological and hydrological data, well construction details, mitigation measures, and other relevant factors necessary to assure adequate sanitary control.
>
> . . . .
> (e)     The SCA shall be owned by the purveyor in fee simple, or the purveyor shall have the right to exercise complete sanitary control of the land through other legal provisions.
>
> . . . .
> (g)     *Where portions of the control area are in the possession and control of another, the purveyor shall obtain a duly recorded restrictive covenant which shall run with the land, restricting the use of the land in accordance with this chapter*[2] *and provide the department with copies of the appropriate documentation.*

WAC 246-290-135(2) (emphasis added).

In 2002, the old well began to have problems, and the Butterfield community desired to drill a new well at the same location.  The Myers and Butterfield met to discuss the requirements of an SCA.  The Myers opposed an SCA on their property unless

---

[2] The chapter prohibits constructing, storing, disposing, or applying any source of contamination within the SCA without the permission of the purveyor.  WAC 246-290-135(2)(f)(i).

compensated in rent.[3]  Butterfield told the Myers that the SCA had already been imposed on their land by the new regulation and that they had no control over it.  Butterfield then drilled the new well without further discussing the SCA with the Myers.

In 2004, the Department told Butterfield it needed to submit a declaration or covenant that would create a 100-foot SCA around the recently built well.  On November 5, 2004, Dana Brost (Brost), then-president of Butterfield, submitted to the Department two documents, a "Declaration of Covenant" and a "Restrictive Covenant." CP at 25, 27 (some capitalization omitted).  Those documents prevented the "grantors" from constructing or maintaining a source of contamination within "100 (One Hundred) feet of the well."  CP at 25, 27.  The documents were signed by "Dana M. Brost, Pres.," not by the Myers.  CP at 25, 27.

In 2011, the Myers learned from legal counsel that the two documents submitted by Butterfield did not create an encumbrance on their property because they had not signed them.  In 2012, the Myers created the Carol Myers Living Trust (the Trust) and transferred all their property, including Lot 20, into the trust.

---

[3] The Myers believe that the regulation prohibits them from building within the 100-foot SCA.  We question this.  The SCA prohibits conducting certain activities within the SCA that might contaminate the community's water.  Locating a drain field within the SCA might be prohibited by an SCA but locating a building should not.  Even wells are enclosed in buildings, albeit small ones.

On September 29, 2023, the Trust filed this declaratory action, seeking to have the two 2004 documents delivered to the Department declared void. One year later, the Trust moved for summary judgment. Butterfield opposed the Trust's motion and filed a cross motion for summary judgment. It argued that the Trust's declaratory action was barred by (1) the statute of limitations, (2) laches, (3) adverse possession, and (4) prescriptive easement or easement by necessity. The trial court granted the Trust's motion, denied Butterfield's cross motion, and entered judgment in favor of the Trust. Specifically, the judgment declared that the two 2004 documents were void and that there is no SCA as "contemplated and required by WAC 246-290-135 restricting [the] use of" Lot 20. CP at 206.

Butterfield appeals to this court.

## ANALYSIS

Neither party claims there are any genuine issues of material fact. We agree. This appeal turns on legal questions. Accordingly, our review of the trial court's order is de novo. *Snohomish County Pub. Transp. Benefit Area Corp. v. FirstGroup Am., Inc.*, 173 Wn.2d 829, 834, 271 P.3d 850 (2012).

*Statutes of limitation*

Butterfield argues that actions relating to property rights are subject to statutes of limitation and then implies that either the statutes of limitation relating to trespass, or written agreements, or for a liability arising expressly or impliedly out of a written agreement, or inverse condemnation actions apply here. Butterfield fails to explain how the current action is one for trespass, or an action on a contract, or a liability expressly or impliedly out of a written agreement, or an action for inverse condemnation. It is undisputed that the Myers objected to the SCA and refused to grant Butterfield any such rights within Lot 20. Beyond this, we decline to address the possibility that any of those periods of limitation apply here. *See Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986) (We do not consider arguments that are undeveloped in a party's brief.).

Butterfield next cites an unpublished opinion for the proposition that declaratory judgments must be brought within a reasonable time, and a reasonable time is generally measured by analogous statutes of limitation. This is settled law. *See Eyman v. Ferguson*, 7 Wn. App. 2d 312, 327, 433 P.3d 863 (2019).

Here, the trial court declared what rights, if any, the two 2004 documents conveyed to Butterfield. By declaring that the two documents were void and did not create an SCA in Lot 20, this action most closely resembles a quiet title action. The

documents undoubtedly were void. Brost, signing as president of Butterfield, purportedly conveyed an SCA in Lot 2 to Butterfield. Butterfield had no legal authority to convey an SCA to itself. A quiet title action is not subject to a period of limitation; it may be brought at any time. *Petersen v. Schafer*, 42 Wn. App. 281, 284, 709 P.2d 813 (1985) (citing *Van Sant v. City of Seattle*, 47 Wn.2d 196, 200, 287 P.2d 130 (1955)). We conclude that the Trust's substantial delay in bringing this action was not barred by any statutes of limitation.

*Laches*

Butterfield next argues that the trial court erred by not applying laches to bar the Trust's request for declaratory relief. We disagree.

To establish laches, a party must show (1) knowledge by plaintiff of facts constituting a cause of action or a reasonable opportunity to discover such facts, (2) unreasonable delay by plaintiff in commencing an action, and (3) damage to defendant resulting from the delay. *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 77, 277 P.3d 18 (2012). The Trust responds that Butterfield has not shown it will be damaged by having the nonexistence of its SCA declared. We prefer to decide this argument on a more obvious ground.

One requesting equity must come into court with clean hands. *Pierce County v. State*, 144 Wn. App. 783, 832, 185 P.3d 594 (2008). What this means is that one asking a court to do justice must have itself acted justly. Here, Butterfield attempted to convey an SCA to itself, knowing that the Myers objected to this. In attempting to burden Lot 2 over the Myers' objection, Butterfield acted unjustly. We decline to apply laches or any other equitable remedy in Butterfield's favor.

*Prescriptive easement*

Butterfield next argues its SCA exists on Lot 2 because of a prescriptive easement. We disagree.

To prove a prescriptive easement, the claimant must show: (1) *use* adverse to the right of the servient user, (2) open, notorious, and uninterrupted *use* for the entire prescriptive period, which is 10 years, and (3) knowledge of such *use* by the owner of the land at a time when the owner was able to assert and enforce their rights. *Dunbar v. Heinrich*, 95 Wn.2d 20, 22, 622 P.2d 812 (1980). The Trust responds that Butterfield never made use of the SCA; rather, it made use only of its well, its equipment, and its pipelines. We agree. Butterfield has not used any area other than the 20- by 20-foot area occupied by the well and wellhouse. We conclude that Butterfield has not established it has an SCA by prescriptive easement.

*Equitable burden*

For the first time on appeal, Butterfield argues it should have an "equitable burden" of an SCA on Lot 2. Appellant's Am. Opening Br. at 33. In support of its argument, it cites *Brown v. Charlton*, 90 Wn.2d 362, 583 P.2d 1188 (1978).

The facts of *Brown* are intricate. Suffice it to say, *Brown* stands for the principle that an "[a]ny person purchasing the water rights and water system with notice, actual or constructive, of the burden on that system, t[akes] subject to the burden." *Id.* at 366. Application of this rule does not create an SCA in Butterfield's favor. Here, the Myers did not purchase water rights and a water system. Nor did they have constructive notice of the later-enacted regulation in 1992 when they purchased Lot 2.

Butterfield construes the equitable burden rule of *Brown* as extending to government regulations enacted *after* an owner purchases land. Butterfield asks us to conclude that Lot 2 is burdened by an SCA simply because the Myers purchased a lot on which a well sat. Had the Myers purchased the lot after the Department enacted the SCA regulation, Butterfield's argument would be stronger. But simply stated, *Brown* does not extend to the uncontested facts here.

*Failure to join the well users*

If we conclude that an issue not set forth in the parties' briefs should be considered to properly decide the case, RAP 12.1(b) permits us to request supplemental briefing. After oral argument, we requested supplemental briefing on whether the users of the well should have been joined in the declaratory action and, if so, whether they were prejudiced so that their nonjoinder should cause the trial court's judgment to be reversed. As explained below, we decline to reverse.

RCW 7.24.110 provides in relevant part: "When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Yet, the Trust did not join the well users into this action.

Here, it is possible that the Department will close Butterfield's well because it lacks an SCA. Certainly, the small community using the well would be proper parties had they sought to join the action. But the closer questions are whether the trial court's declaration affects their interest and, if it does, whether we should permit this unraised argument to cause these issues to be relitigated.

During oral argument, we asked the parties whether the Department was aware of this action. We were informed that the Department is aware of the litigation and is awaiting the result. Wash. Ct. of Appeals oral argument, *Carol Myers Living Tr. v. Butterfield Water Co., Inc.*, No. 40813-2-III (Jan. 29, 2026), at 10 min., 29 sec. through 11 min., 14 sec. (*audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org). Undoubtedly, the Department knows that the 2004 documents submitted by Butterfield did not create an SCA. A lay examination of the documents shows that the Myers did not convey anything because they did not sign the documents.

Were we to reverse and order the trial court to vacate the judgment, the best relief the well users might achieve is to have the court refuse to issue a declaratory judgment. This, though, will not *create* an SCA in favor of Butterfield. If the Department were to require an SCA for the well's continued use, the community will find itself back in its current position but having spent substantial attorney fees.

We think the better solution is for the Department to understand the length to which Butterfield has attempted to comply with its SCA requirements. The Department might, and perhaps should, work with the community if Butterfield cannot reach a

11

reasonable solution with the Trust. WAC 246-290-140[4] permits the Department to take a flexible approach in these situations.

We decline to decide this case based on an argument not briefed by the parties because it is not necessary for properly deciding the case. Reversal and further litigation will likely not accomplish the community's goals.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____          _____
Cooney, J.                                                           Murphy, J.

---

[4] WAC 246-290-140 states:

At the discretion of the department, owners of existing systems without approved construction documents shall provide information necessary to establish the extent of the water system's compliance with this chapter. At a minimum, this shall include submission and approval by the department of: (1) A water system plan or small water system management program; (2) As-built or record drawings; and (3) Water quality analyses.